**Opinion issued August 30, 2018**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-17-00501-CV**

———————————

**FORTITUDE ENERGY, LLC, Appellant/Cross-Appellee**

**V.**

**SOONER PIPE LLC, Appellee/Cross-Appellant**

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-31946**

## O P I N I O N

In this case, non-party San Gabriel Resources, LLC, entered into a contract

with appellant/cross-appellee Fortitude Energy, LLC. The contract required, among

other obligations, that Fortitude assume San Gabriel's debt to appellee/cross-

appellant Sooner Pipe LLC for the provision of oilfield pipe. When Fortitude failed to pay Sooner Pipe the amount originally owed to it by San Gabriel under several outstanding invoices, Sooner Pipe sued Fortitude for breach of contract. Sooner Pipe moved for summary judgment on its own claim, and the trial court rendered judgment in favor of Sooner Pipe, awarding it $410,872.40 in damages from Fortitude.

Both parties appealed the trial court's judgment. In five issues, Fortitude contends that (1) the trial court failed to rule on the parties' objections to summary judgment evidence; (2) the trial court, in granting summary judgment, ignored Fortitude's amended answer, in which it asserted affirmative defenses, and Fortitude's summary judgment response, in which it raised fact issues concerning the contract's validity; (3) because Fortitude acquired all of San Gabriel's rights under their contract in San Gabriel's bankruptcy proceeding, this acquisition "negated the validity" of their contract or, alternatively, created a fact issue regarding whether that contract was valid and enforceable; (4) Sooner Pipe failed to establish that San Gabriel owed it a debt; and (5) Sooner Pipe did not establish that it presented its claim to Fortitude and, therefore, it cannot recover attorney's fees. In its cross-appeal, Sooner Pipe contends that the trial court erred by failing to award it attorney's fees, prejudgment interest, postjudgment interest, and court costs.

We affirm in part and reverse and remand in part.

2

## Background

Beginning in 2013, Fortitude and San Gabriel entered into several participation agreements and joint operating agreements concerning the exploration and development of oil and gas leases in Reeves County, Texas ("the Reeves County Leases"). Fortitude owned a working interest in the leases, and San Gabriel, along with a related entity known as Pecos Production Company, LLC, served as the operator.[1]

Sooner Pipe is a company that provides pipe used in oilfield operations. In June 2014, Sooner Pipe and San Gabriel entered into a contract under which Sooner Pipe provided San Gabriel with pipe for four different wells. Sooner Pipe issued ten invoices to San Gabriel throughout the summer of 2014. San Gabriel did not pay Sooner Pipe, and the total outstanding balance under the invoices was $410,872.40. In July 2015, Sooner Pipe's counsel sent a letter to San Gabriel, demanding payment of the outstanding invoices or Sooner Pipe would file suit.

The working relationship between Fortitude, the working interest owner of the Reeves County Leases, and San Gabriel, the operator, deteriorated in 2014 and 2015. Unbeknownst to Sooner Pipe when it sent its demand letter to San Gabriel in July 2015 for pipe it had sold it, in February 2015, Fortitude and San Gabriel had entered into a contract in an attempt to resolve the disputes that were mounting

---

[1]    Neither San Gabriel nor Pecos Production have ever been parties to this proceeding.

3

between them ("the Debt Agreement"). The Debt Agreement imposed the following obligations, among others:

1. Contemporaneously herewith, San Gabriel is paying the sum of $500,000 to Fortitude in immediately available funds (the "Payment"). The Payment will be made by wire transfer in accordance with wire transfer instructions provided by Fortitude.

2. Contemporaneously herewith, San Gabriel, Pecos Production, and Fortitude are executing and delivering an assignment, conveyance and bill of sale that is substantially identical in form and substance to that attached hereto as **Exhibit B** (the "Assignment"), pursuant to which San Gabriel and Pecos Production are assigning to Fortitude all of their respective rights, titles, and interests in the Reeves County, Texas oil and gas leases and associated assets therein described (collectively, the "Transferred Reeves County Interests"), effective for all purposes as of October 10, 2014 (the "Transfer Date").

. . . .

5. Upon receipt of the Payment, Fortitude hereby assumes and agrees to pay and perform timely . . . *all obligations and liabilities of San Gabriel and Pecos Production* for the trade payables and other indebtedness *listed on **Exhibit D*** attached hereto and made a part hereof for all purposes, all of which were incurred prior to the Transfer Date, *together with all penalties, fees, interest, costs, and other expenses payable with respect thereto* (collectively, the "Assumed Payables") . . . .

(Emphasis added.) In short, San Gabriel paid $500,000 to Fortitude and assigned Fortitude all of its Reeves County Leases in exchange for Fortitude's assuming all of San Gabriel's debt, which included San Gabriel's debt to Sooner Pipe. The Debt Agreement also included a clause stating that the parties "acknowledge that this Agreement is being made by each Party of its own free choice, without any inducement offered in any way other than the express representations, warranties,

4

and agreements contained in this Agreement and/or its exhibits" and stating that each party "warrants and represents that no promise, agreement, representation, warranty, inducement or condition not set forth in this Agreement and/or its exhibits has been made or relied upon by said Party in executing this Agreement."

Exhibit B, the "Assignment, Conveyance and Bill of Sale" which was incorporated by reference into the Debt Agreement, included language stating that San Gabriel and Pecos Production, as the grantors, conveyed "[a]ll of the right, title, and interest of Grantor" in the Reeves County Leases and in all wells located on the leases as well as

> [t]o the extent legally transferable by Grantor, all of Grantor's lease files, abstracts and title opinions, production records, well files, accounting records, insofar as related to the Properties (but not including general tax and general financial accounting records), seismic records and surveys, gravity maps, electric logs, geological or geophysical data and records, and other files, documents and records of every kind and description which relate to the Properties.

Exhibit B also included a disclaimer provision stating that "[e]xcept for the express representations and warranties of grantor in the Agreement and except for the special warranty of title of grantor in this assignment, the properties are transferred by grantor and accepted by grantee without representation or warranty of any kind . . . ." This provision also included language stating that "grantee [Fortitude] acknowledges that it has performed such examinations, inquiries, and due diligence regarding the properties as grantee deems necessary."

5

Exhibit D contained the list of San Gabriel's "assumed payables" that Fortitude agreed to assume upon transfer of the $500,000 payment. This list included San Gabriel's $410,872.40 debt to Sooner Pipe. The Debt Agreement included a provision in which San Gabriel and Pecos Production represented and warranted to Fortitude that "the amounts of the Assumed Payables set forth on attached **Exhibit D** are, to the best of San Gabriel's and Pecos Production's knowledge, true and correct and represent the entirety of the unpaid bills owing to third party vendors for services performed and materials supplied to the properties covered by the Operating Agreements prior to the Transfer Date."

It is undisputed that San Gabriel made the $500,000 payment and transferred its Reeves County Leases to Fortitude. It is also undisputed that Fortitude never paid Sooner Pipe the amount originally owed to it by San Gabriel that Fortitude assumed in the Debt Agreement.

San Gabriel filed for Chapter 7 bankruptcy in April 2016, and the bankruptcy court appointed a trustee to manage the bankruptcy estate.

Sooner Pipe filed suit against Fortitude, and Fortitude only, in May 2016. Sooner Pipe alleged that it was a third-party beneficiary under the Debt Agreement, and it asserted a cause of action against Fortitude for breach of contract arising out of Fortitude's failure to pay the $410,872.40 owed to it. Sooner Pipe sought recovery

6

of its attorney's fees pursuant to Civil Practice and Remedies Code Chapter 38, and it pleaded that it was entitled to pre- and postjudgment interest and costs.

Sooner Pipe then moved for summary judgment on its breach of contract claim, arguing that it had established, as a matter of law, that it was a third-party beneficiary of the Debt Agreement, that the Debt Agreement was valid and enforceable, that San Gabriel had performed under the Debt Agreement by paying Fortitude $500,000 and transferring its Reeves County Leases to Fortitude, that Fortitude had assumed San Gabriel's debt to Sooner Pipe, and that Fortitude had breached the Debt Agreement by failing to pay Sooner Pipe. Sooner Pipe argued that it was entitled to damages, attorney's fees, costs, and pre- and postjudgment interest. Specifically, Sooner Pipe argued that it was entitled to its reasonable and necessary attorney's fees "under the authority of TEX. CIV. PRAC. & REM. CODE § 38.004 and the [Debt] Agreement."

As summary judgment evidence, Sooner Pipe attached an affidavit from its attorney concerning the attorney's fees Sooner Pipe had incurred, the Debt Agreement, a wire transfer confirmation that San Gabriel paid $500,000 to Fortitude, and an assignment of Leases executed contemporaneously with the Debt Agreement and filed in the Reeves County real property records.[2] Sooner Pipe also attached

---

[2]    This assignment was substantively identical to Exhibit B, attached and incorporated by reference into the Debt Agreement.

answers to a deposition on written questions completed by Steven Foy, San Gabriel's principal, concerning the Agreement. Sooner Pipe also attached an affidavit from Dorinda Barker, Sooner Pipe's vice president and treasurer. Barker averred that Sooner Pipe had sold pipe to San Gabriel under ten invoices in the summer of 2014, but that San Gabriel had failed to pay the outstanding invoices. Barker also averred that Sooner Pipe had learned of the Debt Agreement, in which Fortitude had assumed San Gabriel's debt to Sooner Pipe, but that Fortitude had also failed to pay Sooner Pipe. Barker's affidavit incorporated Sooner Pipe's July 15 demand letter to San Gabriel, as well as copies of the outstanding invoices.

Sooner Pipe's summary judgment evidence also included the deposition testimony of Jose Penafiel, Fortitude's president. Penafiel testified that he executed the Debt Agreement on behalf of Fortitude. He agreed that Sooner Pipe was listed as a vendor on the assumed payables exhibit to the Debt Agreement, and he acknowledged that Fortitude had never paid Sooner Pipe. Penafiel repeatedly stated his and Fortitude's position that Fortitude was not required to pay Sooner Pipe because San Gabriel had fraudulently induced Fortitude to enter into the Agreement. Specifically, Penafiel testified that Foy and San Gabriel had "misrepresented the leases that it was delivering [under the Agreement] as being valid," but "the key leases that were delivered as consideration were already expired."

During his deposition, Penafiel testified concerning the difficult working relationship Fortitude had had with San Gabriel, which had ultimately led to the parties entering into the Debt Agreement. Penafiel stated that, at the time the parties were negotiating the Debt Agreement, the parties were "about to lose the assets that we had if we didn't continue to drill wells," and Fortitude entered into the Debt Agreement as a way to "take control of operations from San Gabriel," which "had become a very antagonizing and belligerent party that would not deliver records." Penafiel testified that, because they were faced with the possibility of expiring leases, "the situation was extremely stressful." He stated that there was a brief due diligence period prior to execution of the Debt Agreement and that Fortitude had access to the Reeves County Leases that San Gabriel would be transferring, but Fortitude did not complete any inquiries into the status of the leases prior to signing the Debt Agreement.

Penafiel testified that San Gabriel and Foy had "mismanaged" and "misappropriated" funds that Fortitude had provided in the course of operating the Leases. Penafiel testified with respect to the Debt Agreement that "I think our focus was on trying to salvage what was left. And we were working under the assumption that the key leases that were expired were valid. I think there was a—a rush and a sense of urgency that the—probably led us to overlook the reviewing of whether those leases were in fact expired or not." Penafiel agreed that some of the leases that

San Gabriel transferred to it were valid, but, beyond stating that "key leases" had expired, he did not specify which leases had expired and which were valid.[3] Penafiel agreed that Fortitude received the $500,000 payment from San Gabriel, and he testified that Fortitude did not return that payment to San Gabriel when it learned that some of the transferred Reeves County Leases had expired.

After Sooner Pipe moved for summary judgment, Fortitude filed an amended verified answer in which it asserted numerous affirmative defenses, including, relevant to this appeal, fraudulent inducement and failure of consideration. Specifically, Fortitude alleged:

> To the extent any of Plaintiff's claims rely upon any written instrument [or] contract, such contract is without consideration or that the consideration of such contract has failed in whole or in part, and further, any such contract was fraudulent and induced by fraud including by that of San Gabriel Resources LLC to Defendant Fortitude. Fortitude was a working interest owner, and "stranger" to activities between operator San Gabriel and the vendors to San Gabriel. Fortitude fully met its sole working interest obligation and Fortitude paid over to operator San Gabriel every cent of its working interest owner's AFE obligation; in excess of $20 million. San Gabriel controlled all operations and the funds to pay vendors. The consideration under the referenced Agreement failed, in whole or in part, including that: i) the interests transferred were fraudulently found to be terminated and of no value, thereby the Agreement is unenforceable as to Fortitude; and ii) [a]ll books and records of the operation were to have been

---

[3] Penafiel testified that it was "inconsequential" that some of the leases San Gabriel transferred were valid because "you have to have an entire section to actually drill up a piece of acreage where it's coherent in an economic sense. So . . . even though there may be 5 or 10 or 20 acres, you need a 650-acre position in a section to actually drill it. . . . I don't think we had anything close to that."

transferred to Fortitude, but no operator records were ever received, preventing and blocking Fortitude from any operations.

Fortitude also alleged that, in San Gabriel's bankruptcy proceeding, Fortitude purchased all causes of action and claims that San Gabriel could have brought against Fortitude, "including all claims and rights of San Gabriel under the Agreement." Fortitude alleged that, as a result of this acquisition, its acquiring of "the San Gabriel side of the contract merged all contracts rights and interests into Fortitude," and, thus, "[t]he Agreement is by Fortitude, nullified, compromised, and released, including those on which liability is claimed thereunder to any third parties."

Fortitude then responded to Sooner Pipe's summary judgment motion. Fortitude argued that any attempt by Sooner Pipe to prove the debt that San Gabriel originally owed to it would violate the automatic stay in place as a result of San Gabriel's bankruptcy proceeding. Fortitude objected to Sooner Pipe's summary judgment evidence that attempted to prove San Gabriel's debt—including Barker's affidavit, the July 2015 demand letter, and the invoices—as violating the automatic stay. Fortitude also objected to the deposition on written questions completed by Foy because at the time Foy answered those questions, San Gabriel was already in bankruptcy and thus only the bankruptcy trustee could act as San Gabriel's representative.

11

Fortitude argued that the Debt Agreement was no longer valid and enforceable because, as a result of its acquisition in the bankruptcy proceeding of San Gabriel's claims against it, Fortitude now owned "both sides" of the Debt Agreement and Fortitude "has settled, released and terminated the San Gabriel/Fortitude Agreement." Fortitude also attached an affidavit from Penafiel and argued that this affidavit raised fact issues on Fortitude's affirmative defenses of fraudulent inducement and failure of consideration. Penafiel's affidavit, in large part, repeated the allegations from Fortitude's amended answer verbatim. Penafiel's affidavit included one sentence not included in Fortitude's amended answer, in which he averred, "As San Gabriel contracted to but failed to turn over operatorship, records and leases, but none of which was done, Fortitude could not operate, take over, or assume anything."

In reply, Sooner Pipe objected to Penafiel's affidavit as conclusory. Sooner Pipe also argued that because Fortitude had not objected to the affidavit of Sooner Pipe's counsel concerning attorney's fees, Fortitude had conceded the validity of those fees, and Sooner Pipe was thus entitled to recover $92,500 in fees. Fortitude then filed a sur-reply arguing, among other things, that Sooner Pipe could not recover its attorney's fees because it failed to establish that it had presented its claim to Fortitude.

The trial court did not issue a separate order ruling on the parties' objections to summary judgment evidence. Instead, the trial court signed an order stating, "After considering the Motion, any responses thereto, all summary judgment evidence, the arguments of counsel, if any, the record, and the applicable law, the Court is of the opinion that Plaintiff's Motion should be **GRANTED**." The trial court had handwritten the phrase "all summary judgment evidence." The trial court ordered that Sooner Pipe recover $410,872.40 from Fortitude.

Both parties moved for a new trial and modification of the judgment. Sooner Pipe, in particular, argued that the trial court had erred by failing to award it attorney's fees and failing to award it pre- and postjudgment interest and costs. Both motions were overruled by operation of law, and both parties appealed the trial court's judgment.

**Ruling on Summary Judgment Objections**

In its first issue, Fortitude contends that the parties are prevented from properly presenting the case on appeal because, although both parties lodged objections to the other party's summary judgment evidence, the trial court did not rule on the objections. Fortitude requests that we abate the case and return the case to the trial court with instructions to memorialize its evidentiary rulings.

A party must present its summary judgment evidence in a form that would be admissible at trial. *Okpere v. Nat'l Oilwell Varco, L.P.*, 524 S.W.3d 818, 824 (Tex.

13

App.—Houston [14th Dist.] 2017, pet. ref'd). Certain defects in summary judgment evidence are defects in substance that a party may raise on appeal even if the complaining party failed to object or failed to secure an adverse ruling in the trial court. *Id.* Complaints regarding defects in form, however, must be presented to the trial court, and the complaining party must obtain either an explicit or implicit ruling on the objection. *Id.*; *Thibodeau v. Dodeka, LLC*, 436 S.W.3d 23, 27 (Tex. App.—Waco 2014, pet. denied) (stating that party must secure ruling on objections to summary judgment evidence at or before time trial court makes summary judgment ruling or party fails to preserve complaint concerning objections for appellate review). The mere granting of a summary judgment motion "does not suffice as an implicit ruling on objections" to summary judgment evidence. *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 532 (Tex. App.—Dallas 2014, no pet.). For there to be an implicit ruling on objections to summary judgment evidence, "there must be some indication that the trial court ruled on the objections in the record or in the summary judgment itself, other than the mere granting of the summary judgment." *Id.*; *see also Seim v. Allstate Tex. Lloyds*, —S.W.3d—, No. 17-0488, 2018 WL 3189568, at *3–4 (Tex. June 29, 2018) (per curiam) (agreeing with intermediate courts holding that mere granting of summary judgment was not implicit ruling on objections to summary judgment evidence and stating that ruling may be implied if implication is "clear").

Here, both Fortitude and Sooner Pipe objected to the other party's summary judgment evidence. Fortitude objected to San Gabriel's response to its deposition on written questions, completed by Foy, on the basis that Sooner Pipe propounded this discovery on San Gabriel after it had filed for bankruptcy, and thus only the bankruptcy trustee, and not Foy, could act as San Gabriel's representative. Fortitude also objected to Barker's affidavit, Sooner Pipe's demand letter to San Gabriel, and the outstanding invoices themselves on the basis that this evidence violated the automatic stay as an attempt to prove a debt of San Gabriel, the bankruptcy debtor. Fortitude also argued that these exhibits constituted inadmissible hearsay. Sooner Pipe objected to several portions of Penafiel's affidavit as conclusory.

The trial court did not issue a separate order ruling on the parties' objections to the summary judgment evidence. Sooner Pipe submitted a proposed order granting its summary judgment motion that stated: "Pending before the Court in the above-captioned action is *Plaintiff's Motion for Summary Judgment*. After considering the Motion, any responses thereto, the arguments of counsel, if any, the record, and the applicable law, the Court is of the opinion that Plaintiff's Motion should be GRANTED." In its final judgment, the trial court made handwritten additions to the proposed order. With the trial court's additions, the order stated: "After considering the Motion, any responses thereto, *all summary judgment evidence*, the arguments of counsel, if any, the record, and the applicable law, the

15

Court is of the opinion that Plaintiff's Motion should be GRANTED." (Emphasis added.) The trial court thus indicated that, in deciding the motion, it considered all of the summary judgment evidence presented. We therefore conclude that this statement constitutes an implicit overruling of the parties' objections to the summary judgment evidence. *See Ennis, Inc.*, 427 S.W.3d at 532 (stating that for there to be implicit overruling of objections to summary judgment evidence, there must be some indication trial court "ruled on the objections in the record or in the summary judgment itself, other than the mere granting of the summary judgment").

Because we hold that the trial court impliedly overruled the parties' objections to the summary judgment evidence and considered all of the evidence presented to it in making its ultimate summary judgment ruling, we decline Fortitude's suggestion to abate the appeal to allow the trial court the opportunity to memorialize its ruling on the objections.

We overrule Fortitude's first issue.

## Summary Judgment

Fortitude challenges the merits of the trial court's summary judgment ruling in its second, third, and fourth issues.

### A. *Standard of Review*

We review a trial court's ruling on a summary judgment motion de novo. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258 (Tex. 2018). To

16

prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *City of Richardson*, 539 S.W.3d at 258–59. When a plaintiff moves for summary judgment on its own claim, it must establish each essential element of its cause of action as a matter of law. *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 717 (Tex. App.—Dallas 2014, pet. denied).

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam); *see also First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (stating that fact question exists if evidence rises to level that would enable reasonable and fair-minded people differ in their conclusions). We review the evidence presented in the motion and response in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We indulge

every reasonable inference and resolve any doubts in the nonmovant's favor. *Helix Energy Sols. Grp., Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017).

A plaintiff moving for summary judgment is not under any obligation to negate affirmative defenses. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see Woodside v. Woodside*, 154 S.W.3d 688, 691 (Tex. App.—El Paso 2004, no pet.). An affirmative defense prevents the granting of a summary judgment only if each element of the affirmative defense is supported by summary judgment evidence. *Tesoro Petroleum*, 106 S.W.3d at 124. A party raising an affirmative defense in opposition to a summary judgment motion must either (1) present a disputed fact issue on the opposing party's failure to satisfy its own summary judgment burden of proof or (2) establish the existence of a fact issue on each element of his affirmative defense. *Id.*; *see Woodside*, 154 S.W.3d at 691–92.

## B.     *Validity of Agreement Between Fortitude and San Gabriel*

### 1.     Fortitude's argument that Debt Agreement was procured by fraud

In its second issue, Fortitude argues that, after Sooner Pipe filed its motion for summary judgment, Fortitude amended its answer to assert a variety of defenses to Sooner Pipe's claim for breach of contract, and, in its summary judgment response, it presented Penafiel's affidavit as supporting evidence. Fortitude argues that Sooner Pipe ignored these defenses and erroneously contended that, under the Debt

18

Agreement's merger clause, these defenses were barred. Fortitude further argues that its summary judgment evidence raised a fact issue as to whether San Gabriel fraudulently procured the Debt Agreement, thus rendering the Debt Agreement invalid and unenforceable.

To prevail on its breach of contract a claim, a plaintiff is required to establish (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). To maintain a breach of contract action, a plaintiff must show privity of contract or that it is a third-party beneficiary under the contract. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied). A person seeking to establish third-party beneficiary status must demonstrate that the contracting parties "intended to secure a benefit to that third party" and "entered into the contract directly for the third party's benefit." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017); *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (stating that third parties have standing to recover under contracts that are clearly intended for their direct benefit and that contract need not have been executed solely to benefit third party). Sooner Pipe alleged that it was a third-party beneficiary of the Debt Agreement between San Gabriel and Fortitude. Fortitude has not challenged, either in the trial

19

court or on appeal, Sooner Pipe's status as a third-party beneficiary to the Debt Agreement.

The affirmative defense of failure of consideration defeats summary judgment if the nonmovant alleges facts and presents evidence that the consideration in the agreement was not received. *Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Failure of consideration occurs when, because of some supervening cause after an agreement is reached, the promised performance fails. *Bassett v. Am. Nat'l Bank*, 145 S.W.3d 692, 696 (Tex. App.—Fort Worth 2004, no pet.); *Parker*, 98 S.W.3d at 301. "Failure of consideration may result from one party's failure to perform its obligations under the agreement." *Quick v. Plastic Sols. of Tex., Inc.*, 270 S.W.3d 173, 189–90 (Tex. App.—El Paso 2008, no pet.); *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.). A total failure of consideration is a basis for cancellation or rescission of the contract; however, a partial failure of consideration "will not invalidate the contract and prevent recovery thereon, but is a defense pro tanto." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 748 (Tex. App.—Dallas 2012, no pet.) (citing *Huff v. Speer*, 554 S.W.2d 259, 263 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.)); *Carter v. PeopleAnswers, Inc.*, 312 S.W.3d 308, 312 (Tex. App.—Dallas 2010, no pet.) ("A partial failure of consideration does not invalidate the contract but entitles the injured party to a suit for damages. Moreover, the right of rescission is waived

20

by the injured party's retention of the partial performance rendered by the breaching party.").

In addition, a contract "is subject to avoidance on the ground of fraudulent inducement." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011); *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 328 (Tex. App.—Houston [14th Dist.] 2011, no pet.). To prevail on a defense of fraudulent inducement, the defendant must establish the elements of fraud "as they relate to an agreement between the parties." *McLernon*, 347 S.W.3d at 328 (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)). The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners*, 341 S.W.3d at 337 (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)).

After Sooner Pipe moved for summary judgment on its breach of contract claim, Fortitude filed an amended verified answer, asserting numerous affirmative defenses. Among its affirmative defenses, Fortitude alleged:

> To the extent any of Plaintiff's claims rely upon any written instrument [or] contract, such contract is without consideration or that the consideration of such contract has failed in whole or in part, and further, any such contract was fraudulent and induced by fraud including by that of San Gabriel Resources LLC to Defendant Fortitude. Fortitude

21

was a working interest owner, and "stranger" to activities between operator San Gabriel and the vendors to San Gabriel. Fortitude fully met its sole working interest obligation and Fortitude paid over to operator San Gabriel every cent of its working interest owner's AFE obligation; in excess of $20 million. San Gabriel controlled all operations and the funds to pay vendors. The consideration under the referenced Agreement failed, in whole or in part, including that: i) the interests transferred were fraudulently found to be terminated and of no value, thereby the Agreement is unenforceable as to Fortitude; and ii) [a]ll books and records of the operation were to have been transferred to Fortitude, but no operator records were ever received, preventing and blocking Fortitude from any operations.

Fortitude then responded to Sooner Pipe's summary judgment motion. Fortitude argued, among other things, that the Debt Agreement was invalid and that it had raised fact issues on the defenses of fraud, fraudulent inducement, lack of consideration, and failure of consideration. Fortitude argued that San Gabriel had "induced, represented, warranted and agreed to transfer valid operating leases, deliver over the books and records, and to transition Fortitude to potentially take over as Operator," but San Gabriel "did none of these things." As summary judgment evidence, Fortitude attached Penafiel's affidavit. With respect to the defenses of fraud and failure of consideration, Penafiel's affidavit repeated the allegations from Fortitude's amended answer verbatim, although Penafiel did also state in his affidavit, "As San Gabriel contracted to but failed to turn over operatorship, records and leases, but none of which was done, Fortitude could not operate, take over, or assume anything." Fortitude also attached as summary judgment evidence the Debt

22

Agreement and various records from San Gabriel's bankruptcy proceeding relating to Fortitude's purchase of San Gabriel's causes of action against it.

Sooner Pipe's summary judgment evidence included Penafiel's deposition, in which he testified unequivocally that San Gabriel paid Fortitude the $500,000 it was obligated to pay under the Debt Agreement and that it transferred its Reeves County Leases to Fortitude. Penafiel testified that "key leases" had expired, although he did not identify the specific leases that had expired and he acknowledged that Fortitude conducted no due diligence concerning the status of the leases prior to entering into the Debt Agreement. Penafiel also testified that San Gabriel had failed to turn over books and records to Fortitude, including its records with respect to the amounts San Gabriel owed to its vendors. Penafiel stated that Fortitude kept the $500,000 payment from San Gabriel and it did not transfer any of the leases back to San Gabriel.

Penafiel repeatedly stated in his deposition that San Gabriel "fraudulently induced" Fortitude to enter into the Debt Agreement, and he stated in his affidavit that the Debt Agreement was "fraudulent as to Fortitude and induced by the fraud of San Gabriel." Penafiel testified that San Gabriel materially misrepresented that "key leases" that were to be transferred from San Gabriel to Fortitude under the Debt Agreement were valid when in fact they had expired, but Fortitude presented no evidence of the specific leases that had expired, when they had expired, or San

23

Gabriel's knowledge that the leases had expired. Furthermore, Fortitude relies upon Penafiel's affidavit to create a fact issue on its affirmative defense of fraudulent inducement. However, as Sooner Pipe points out, Penafiel's affidavit merely repeats verbatim the allegations in Fortitude's amended answer. Penafiel stated that San Gabriel fraudulently induced Fortitude to enter into the Debt Agreement, but his affidavit provided no factual support for this conclusion.

Conclusory statements, that is, statements that do not "provide the underlying facts to support the conclusion," are insufficient to raise a fact issue in response to a summary judgment motion. *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Additionally, "an affidavit that is nothing more than a sworn repetition of allegations in the pleadings," as Penafiel's affidavit is here, "has no probative force, as the statements are no more than conclusions or a mere surmise or suspicion." *Id.*; *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.). We conclude that Fortitude did not raise a fact issue on every element of its fraudulent inducement affirmative defense, such that it could defeat summary judgment. *See Tesoro Petroleum*, 106 S.W.3d at 124 (party raising affirmative defense may defeat summary judgment by establishing fact issue on each element of defense).

24

With respect to Fortitude's affirmative defense of failure of consideration, the summary judgment evidence establishes at most a partial failure of consideration, as Penafiel testified unequivocally that San Gabriel had at least partially performed under the Debt Agreement and that Fortitude had retained the $500,000 payment that San Gabriel had made to it. Partial failure of consideration entitles a party to sue the breaching party for damages, but it does not invalidate the contract or prevent recovery upon the contract. *Cheung-Loon, LLC*, 392 S.W.3d at 748; *Carter*, 312 S.W.3d at 312. Thus, even if Fortitude has raised a fact issue on its defense of partial failure of consideration, the evidence supporting that defense does not raise a fact issue on the validity of the Debt Agreement, which is an essential element of Sooner Pipe's claim for breach of contract. *See B & W Supply*, 305 S.W.3d at 16 (stating elements of breach of contract claim).

### 2. Fortitude's argument that Debt Agreement was no longer enforceable

In its third issue, Fortitude argues that it raised a fact issue precluding summary judgment because it presented evidence that the Debt Agreement was no longer enforceable. Specifically, Fortitude argues that, during San Gabriel's bankruptcy proceeding, Fortitude acquired all of San Gabriel's rights and claims against Fortitude, and as a result, "Fortitude owns the rights and claims of both contracting parties under the San Gabriel/Fortitude Agreement," and the Debt Agreement is no longer enforceable.

As summary judgment evidence, Sooner Pipe presented the Debt Agreement between San Gabriel and Fortitude, in which San Gabriel agreed to pay Fortitude $500,000 and transfer certain leases to Fortitude, and Fortitude agreed, among other things, to assume certain debts and obligations of San Gabriel, including a $410,872.40 debt to Sooner Pipe. Sooner Pipe also presented Penafiel's deposition testimony that Fortitude received the $500,000 payment from San Gabriel and that San Gabriel transferred the required leases, although Penafiel testified that "key leases" had expired, and Fortitude thus considered the Debt Agreement to have been fraudulently induced by San Gabriel.

In response, Fortitude presented summary judgment evidence that, in San Gabriel's bankruptcy proceedings, Fortitude purchased from San Gabriel's bankruptcy estate "[a]ny and all causes of action under state common or statutory law [or] federal law, including but not limited to breach of contract and fraud, which could have been brought by Trustee [of San Gabriel's bankruptcy estate] against Fortitude Energy, LLC" for $30,000. Fortitude argues that, as a result of this acquisition, it owned "both sides of the Agreement" between Fortitude and San Gabriel, it had "settled, released and terminated the San Gabriel/Fortitude Agreement," and the Debt Agreement was therefore no longer enforceable.

As Sooner Pipe points out, Fortitude has cited no authority for its contention that because it acquired any causes of action that *San Gabriel* could have brought

26

against Fortitude, this acquisition affects causes of action that *Sooner Pipe* could have brought against Fortitude. Fortitude's bankruptcy-court acquisition might preclude San Gabriel from bringing causes of actions against it, but there is no authority supporting the proposition that this acquisition precludes Sooner Pipe from bringing its cause of action against Fortitude. We conclude that Fortitude's acquisition of causes of action that San Gabriel could have brought against it does not raise a fact issue concerning the validity of the Debt Agreement.

We overrule Fortitude's third issue.

## C.    *Evidence of San Gabriel's Debt Owed to Sooner Pipe*

In its fourth issue, Fortitude argues that the trial court erred in rendering summary judgment in favor of Sooner Pipe because Sooner Pipe did not prove that San Gabriel owed it a debt. Fortitude argues that because San Gabriel was in bankruptcy proceedings at the time and Sooner Pipe did not seek to lift the automatic stay in that proceeding, Sooner Pipe could not introduce, in the underlying state court proceedings, any evidence of its claim or the debt San Gabriel owed.

Sooner Pipe presented the Debt Agreement between San Gabriel and Fortitude as summary judgment evidence. In the Debt Agreement, San Gabriel and Fortitude agreed that:

> Upon receipt of the [$500,000] Payment, Fortitude hereby assumes and agrees to pay and perform timely . . . all obligations and liabilities of San Gabriel and Pecos Production for the trade payables and other indebtedness listed on **Exhibit D** attached hereto and made a part hereof

27

for all purposes, all of which were incurred prior to the Transfer Date [defined in the Agreement as October 10, 2014], together with all penalties, fees, interest, costs, and other expenses payable with respect thereto (collectively, the "Assumed Payables") . . . .

The Debt Agreement also included a representation and warranty by San Gabriel to Fortitude that "the amounts of the Assumed Payables set forth on attached **Exhibit D**, are, to the best of San Gabriel's and Pecos Production's knowledge, true and correct and represent the entirety of the unpaid bills owing to third party vendors for services performed and materials supplied to the properties covered by the Operating Agreements prior to the Transfer Date." Included on Exhibit D's list of Assumed Payables was San Gabriel's debt to Sooner Pipe in the amount of $410,872.40.

The Debt Agreement alone establishes that San Gabriel owed its vendor, Sooner Pipe, $410,872.40 and that Fortitude agreed to assume this obligation. Sooner Pipe also presented the affidavit of Dorinda Barker, Sooner Pipe's vice president and treasurer, who averred that Sooner Pipe provided materials to San Gabriel under ten invoices throughout the summer of 2014 and that Sooner Pipe had not received payment from San Gabriel. Barker also averred that Sooner Pipe learned of the Debt Agreement between San Gabriel and Fortitude, obligating Fortitude to assume San Gabriel's debt, and that Sooner Pipe had not received payment from Fortitude in satisfaction of the debt. Attached to Barker's affidavit was a July 2015 letter from Sooner Pipe's counsel to San Gabriel, demanding the amounts owed under the outstanding invoices, as well as copies of the invoices

28

themselves. This evidence further establishes the debt that San Gabriel owed to Sooner Pipe.

Fortitude argues that Sooner Pipe failed to "prove up" its claim because San Gabriel was in bankruptcy proceedings and any attempt by Sooner Pipe in the underlying state court proceedings to produce evidence of the debt that San Gabriel owed to it violated the automatic stay in place after San Gabriel filed for bankruptcy. Fortitude cites no authority to support this argument.

The filing of a bankruptcy petition operates as a stay of, among other things,

(1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of [the bankruptcy proceeding], or to recover a claim against the debtor that arose before the commencement of [the bankruptcy proceeding] . . . .

11 U.S.C. § 362(a) (emphasis added). San Gabriel was the bankruptcy debtor. However, Sooner Pipe never asserted any claims against San Gabriel, as San Gabriel had, pursuant to the Debt Agreement, assigned its obligation to Sooner Pipe, among other vendors, to Fortitude. Sooner Pipe thus sued Fortitude, and only Fortitude, for breach of contract. The automatic stay provision of section 362 is not applicable to this case involving parties that are not in bankruptcy.

We conclude that Sooner Pipe adequately established that San Gabriel had owed it a debt and that that debt had been assigned to Fortitude, such that Fortitude

now owed the debt to Sooner Pipe. *See B & W Supply*, 305 S.W.3d at 16 (stating elements of breach of contract cause of action).

We overrule Fortitude's fourth issue.

**Attorney's Fees, Interest, and Costs**

Finally, in its fifth issue, Fortitude contends that Sooner Pipe is not entitled to recovery of attorney's fees because Sooner Pipe failed to establish that it had properly presented its claim. In the sole issue in its cross-appeal, Sooner Pipe contends that the trial court erred by failing to award it attorney's fees, pre-and post-judgment interest, and costs in the final judgment. We address these issues together.

*A.     Entitlement to Attorney's Fees*

Generally, each party to litigation is responsible for bearing the costs of its own attorney's fees unless an award of attorney's fees is authorized by statute or contract. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011); *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 211 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Here, attorney's fees were allegedly provided for by both contract and statute.

When construing a contract, our primary concern is to ascertain the intention of the parties as expressed in the instrument. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014); *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 666 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "We begin our analysis with the language of the contract because it is the best

representation of what the parties mutually intended." *Drummond*, 508 S.W.3d at 666.

Here, among other provisions, the Debt Agreement required Fortitude to assume certain obligations of San Gabriel, including San Gabriel's debt to Sooner Pipe. The Debt Agreement provided:

> Upon receipt of the Payment, Fortitude hereby assumes and agrees to pay and perform timely . . . all obligations and liabilities of San Gabriel and Pecos Production for the trade payables and other indebtedness listed on **Exhibit D** attached hereto and made a part hereof for all purposes, all of which were incurred prior to the Transfer Date, *together with all penalties, fees, interest, costs, and other expenses payable with respect thereto* (collectively, the "Assumed Payables") . . . .

(Emphasis added). In its original petition, Sooner Pipe quoted this provision of the Debt Agreement and sought the recovery of attorney's fees incurred in connection with its contract claim "[a]s permitted under all applicable law, including the provisions of Chapter 38 of the Texas Civil Practice and Remedies Code." Sooner Pipe sought summary judgment on its breach of contract claims and, in its summary judgment motion, stated that it was entitled to reasonable and necessary attorney's fees incurred in the prosecution of its suit "under the authority of TEX. CIV. PRAC. & REM. CODE § 38.004 and the [Debt] Agreement." Sooner Pipe attached the affidavit of its counsel to support its request for attorney's fees. Fortitude did not object to, or otherwise challenge, this summary judgment evidence.

31

The plain language of the Debt Agreement obligates Fortitude, upon receipt of the $500,000 payment from San Gabriel, to assume certain liabilities of San Gabriel—including San Gabriel's debt to Sooner Pipe—"together with all penalties, fees, interest, costs, and other expenses payable with respect thereto." We construe the broad language in this provision as requiring Fortitude to assume the responsibility for attorney's fees incurred with respect to collecting San Gabriel's debt to Sooner Pipe. Fortitude thus had a contractual obligation to pay Sooner Pipe's attorney's fees incurred in connection with Sooner Pipe's attempts to collect the debt owed to it. *See Epps*, 351 S.W.3d at 865 (stating rule that parties generally bear costs of their own attorney's fees unless recovery of fees is authorized by statute or contract).

In arguing that the trial court correctly did not award attorney's fees to Sooner Pipe, Fortitude contends that Sooner Pipe did not provide any summary judgment evidence that Sooner Pipe had presented its claim to Fortitude, thus barring Sooner Pipe's recovery of attorney's fees.

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for, among other things, an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). To recover attorney's fees under Chapter 38: (1) the claimant must be represented by an attorney; (2) the claimant must present the claim

to the opposing party or a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the thirtieth day after the claim is presented. *Id.* § 38.002 (West 2015).

Presentment "is a 'demand or request for payment or performance, whether written or oral.'" *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). No particular form of presentment is required; however, merely filing suit for breach of contract, by itself, does not constitute presentment. *Id.* The claimant for attorney's fees bears the burden of pleading and proving presentment. *Id.* "The purpose of the presentment requirement is to allow the party against whom the claim is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees." *Id.* (quoting *Gibson*, 440 S.W.3d at 157).

Although Sooner Pipe sought attorney's fees pursuant to Chapter 38, Sooner Pipe also argued that it was entitled to attorney's fees under the Debt Agreement. When a party seeks attorney's fees pursuant to a contractual provision allowing the recovery of such fees, the party need not prove presentment, which is a statutory procedural requirement. *See Sacks v. Hall*, 481 S.W.3d 238, 250 (Tex. App.— Houston [1st Dist.] 2015, pet. denied) (noting that presentment is procedural

requirement placed on recovery of attorney's fees by section 38.002); *see also*

*Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 60 (Tex. App.—

Houston [1st Dist.] 2013, pet. denied) (noting that parties are free to contract for

attorney's fees recovery in different manner than that provided by Chapter 38 and

when parties include attorney's fees provision in their contract, language of contract

controls, not language of Chapter 38). Furthermore, courts have repeatedly stated

that the purpose of Chapter 38's presentment requirement is "to allow the party

against whom the claim is asserted an opportunity to pay it or tender performance

within 30 days after they have notice of the claim without incurring an obligation

for attorney's fees." *Genender*, 451 S.W.3d at 924. Here, the language of the Debt

Agreement itself provided notice to Fortitude that attorney's fees might be sought.

We therefore conclude that any failure of Sooner Pipe to provide summary

judgment evidence that it presented its claim to Fortitude does not bar Sooner Pipe

from recovering attorney's fees in light of the contractual provision in the Debt

Agreement allowing for recovery of such fees. Sooner Pipe attached summary

judgment evidence that the Debt Agreement authorizes the recovery of fees, and it

presented uncontroverted evidence of the fees it had incurred. *See Smith v. Patrick

W.Y. Tam Trust*, 296 S.W.3d 545, 547–48 (Tex. 2009) (stating that, generally,

testimony of interested witness concerning attorney's fees is taken as true as matter

of law if testimony is not contradicted by other witness or attendant circumstances,

testimony is clear, direct, positive, free from inaccuracies and circumstances casting suspicion on testimony, and testimony is not unreasonable, incredible, or of questionable belief); *Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 510–11 (Tex. App.—El Paso 2018, no pet.) (stating same). We hold that Sooner Pipe demonstrated that it was entitled to attorney's fees and that the trial court erred by failing to award attorney's fees to Sooner Pipe in its summary judgment order.

## B. *Entitlement to Interest and Costs*

### 1. **Prejudgment Interest**

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*, 466 S.W.3d 143, 153 (Tex. 2015) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)); *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 482 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006) ("Prejudgment interest is awarded to fully compensate the injured party, not to punish the defendant."). An award of prejudgment interest serves two purposes: (1) encouraging settlements and (2) expediting settlements and trials by removing incentives for defendants to delay without creating such incentives for plaintiffs. *Johnson & Higgins of Tex.*, 962 S.W.2d at 529.

35

Texas law provides two sources for an award of prejudgment interest: (1) general principles of equity, and (2) an enabling statute. *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Johnson & Higgins of Tex.*, 962 S.W.2d at 528). The Texas Finance Code includes two enabling statutes relevant for prejudgment interest, but these statutes only apply to claims for wrongful death, personal injury, or property damage, *see* TEX. FIN. CODE ANN. § 304.101 (West 2016), and condemnation cases, *see id.* § 304.201 (West 2016). When, as here, the claims asserted do not fall within an enabling statute, an award of prejudgment interest is governed by equitable principles. *Siam*, 544 S.W.3d at 513; *Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (stating that because breach of contract claim does not fall within enabling statute, equitable principles govern award of prejudgment interest).

Generally, a plaintiff is required to plead for prejudgment interest sought in equity as an element of damages. *DeGroot v. DeGroot*, 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.). Under common law principles, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date the defendant receives written notice of the claim or (2) the date suit is filed. *Siam*, 544 S.W.3d at 513 (quoting *Johnson & Higgins of Tex.*, 962 S.W.3d at 531); *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 194 (Tex. App.—Fort Worth 2012, no pet.). A

36

"claim" is "a demand for compensation or assertion of a right to be paid." *DaimlerChrysler*, 362 S.W.3d at 194 (quoting *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 785 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.)).

A trial court may not reduce or eliminate the plaintiff's prejudgment interest award because of delays caused by either party in resolving the case. *Siam*, 544 S.W.3d at 513 (citing *Matthews v. DeSoto*, 721 S.W.2d 286, 286–87 (Tex. 1986) (per curiam)). When no statute controls the award of prejudgment interest, the decision to award such interest is within the trial court's discretion, and we review the trial court's decision concerning prejudgment interest for an abuse of discretion. *Hand & Wrist Ctr.*, 401 S.W.3d at 717. A trial court abuses its discretion when it acts without reference to guiding rules and principles or when it fails to analyze or apply the law properly. *Id.* The trial court should rely upon equitable principles and public policy in making its decision. *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 487 (Tex. App.—Fort Worth 2004, no pet.).

Here, Sooner Pipe specifically pleaded for prejudgment interest in its original petition, and it repeated its request for prejudgment interest in its motion for summary judgment. Although the trial court rendered summary judgment in Sooner Pipe's favor and awarded damages to Sooner Pipe, the trial court did not award prejudgment interest in its judgment. No evidence in the record supports the trial

court's failure to award prejudgment interest to Sooner Pipe. We agree with Sooner Pipe that it was entitled to prejudgment interest and that the trial court erred by failing to award prejudgment interest in its final judgment. *See Johnson & Higgins of Tex.*, 962 S.W.2d at 528 (stating that prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment").

### 2. Postjudgment Interest

With respect to postjudgment interest, "A money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment." TEX. FIN. CODE ANN. § 304.001 (West 2016); *see id.* §§ 304.002–.003 (West 2016) (setting out postjudgment interest rates); *id.* § 304.005(a) (West 2016) ("[P]ostjudgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied."). A party may recover postjudgment interest even if it is not specifically awarded in the judgment. *DeGroot*, 369 S.W.3d at 926–27; *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 734 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see Office of Atty. Gen. of Tex. v. Lee*, 92 S.W.3d 526, 528 (Tex. 2002) (per curiam) (holding that predecessor statute to section 304.001 does not require, as prerequisite for accrual of postjudgment interest,

that judgment specifically include award of postjudgment interest and, instead, "interest accrues automatically once a court renders its judgment").

Sooner Pipe received a money judgment in its favor, but the judgment did not specifically award postjudgment interest. We hold that Sooner Pipe is statutorily entitled to postjudgment interest despite the trial court's failure to award such interest in the judgment. *See* TEX. FIN. CODE ANN. § 304.001; *DeGroot*, 369 S.W.3d at 927 ("A judgment must specify the applicable post-judgment interest rate.").

### 3.    Costs

Texas Rule of Civil Procedure 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. Taxing costs against a successful party in the trial court generally contravenes Rule 131. *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001); *Trevino*, 531 S.W.3d at 298. A "successful party" is "one who obtains judgment of a competent court vindicating a civil right or claim." *Trevino*, 531 S.W.3d at 298 (quoting *City of Houston v. Woods*, 138 S.W.3d 574, 581 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). Pursuant to Rule 141, the trial court "may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." TEX. R. CIV. P. 141. The trial court's decision to alter the costs award under Rule 141 is within the trial court's sound discretion, but that discretion is not unlimited, and the trial court must follow the requirements

of Rule 141: "that there be good cause and that it be stated on the record." *Furr's Supermarkets*, 53 S.W.3d at 376; *Trevino*, 531 S.W.3d at 298 (stating that we review trial court's award of costs for abuse of discretion).

Here, the trial court rendered summary judgment in favor of Sooner Pipe, awarding it damages on its breach of contract claim against Fortitude. Sooner Pipe was therefore a "successful party" under Rule 131. *See Trevino*, 531 S.W.3d at 298. The trial court's judgment, however, does not award costs to any party. Although, under Rule 141, the trial court may award costs differently for good cause, good cause must be stated on the record. Tex. R. Civ. P. 141; *Furr's Supermarkets*, 53 S.W.3d at 376. The record in this case does not include any statements relevant to the award of costs. Because the trial court did not find or indicate on the record any cause for the failure to award costs, Rule 131 mandated an award of costs to Sooner Pipe as a "successful party." *See Diggs v. VSM Fin., L.L.C.*, 482 S.W.3d 672, 674–75 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Trevino*, 531 S.W.3d at 298 (holding that trial court abused its discretion by failing to award costs when court did not state any good cause that would justify failure to award costs).

We sustain Sooner Pipe's sole issue on cross-appeal. We therefore remand this case to the trial court to determine the amount of attorney's fees, prejudgment interest, postjudgment interest, and costs to which Sooner Pipe is entitled.

## Conclusion

We affirm the portion of the trial court's judgment that awards Sooner Pipe $410,872.40 in damages from Fortitude. We remand the case to the trial court to determine the amount of attorney's fees, prejudgment interest, postjudgment interest, and court costs to which Sooner Pipe is entitled.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.