**Opinion issued August 18, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00983-CV

————————————

**SMILEY DENTAL–BEAR CREEK, P.L.L.C. AND LYNH T. PHAM,
Appellants**

**V.**

**SMS FINANCIAL LA, L.L.C., Appellee**

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2017-77472**

---

### MEMORANDUM OPINION

Appellants, Smiley Dental–Bear Creek, P.L.L.C. ("Smiley Dental") and Lynh

T. Pham (collectively, "appellants"), challenge the trial court's rendition of summary

judgment in favor of appellee, SMS Financial LA, L.L.C. ("SMS Financial"), in

SMS Financial's suit against appellants to collect on a promissory note.   In three

issues, appellants contend that the trial court erred in granting SMS Financial summary judgment and denying appellants' objections to certain summary-judgment evidence.

We affirm.

## Background

In its petition, SMS Financial alleged that on or about December 21, 2012, Smiley Dental executed and delivered to U.S. Bank, N.A. ("U.S. Bank") a promissory note in the principal amount of $234,900.09. On August 8, 2013, the promissory note was amended. Under the promissory note and its amendment, Smiley Dental promised to pay U.S. Bank, by June 10, 2014, the principal amount of $234.900.09 "plus interest, initially at the annual rate of 5.75%" and then at an annual rate of "5.08% when the [a]mendment was executed." Smiley Dental also executed a business security agreement with U.S. Bank, "pledging as collateral, for repayment of the [p]romissory [n]ote debt, its accounts receivable, chattel paper, general intangibles, contract rights, deposit accounts, inventory[,] and equipment." Pham, the managing member of Smiley Dental, executed a continuing unlimited guaranty agreement and a reaffirmation of guaranty, as an individual guarantor, promising repayment of Smiley Dental's promissory note debt.

Later, Smiley Dental defaulted on its promissory note and Pham defaulted on her guaranty agreement by failing to pay the unpaid balance of the promissory note.

2

U.S. Bank liquidated some of the items pledged as collateral and received $20,000.00, but a deficiency balance remained.

Then, SMS Financial "bec[a]me the owner and holder of the aforementioned debt instruments, as successor-in-interest to U.S. Bank," and so, alleged that it was "entitled to collect all monies due." On September 24, 2014, SMS Financial made a written demand for payment to appellants for the unpaid principal balance of $196,599.25 and accrued yet unpaid interest of $19,075.10, for a total owed amount of $215,674.35. According to SMS Financial, since September 24, 2014, "additional daily interest of $31.24 (5.80% per annum) ha[d] been accruing." SMS Financial sued appellants to collect on the promissory note and sought monetary damages in the amount of $215,674.35, pre- and post-judgment interest, and attorney's fees.

Appellants answered, generally denying SMS Financial's allegations and pleading the affirmative defenses of accord and satisfaction, estoppel, failure of consideration, laches, payment, and offset.

SMS Financial moved for summary judgment on its claim to collect on the promissory note, arguing that it was entitled to judgment as a matter of law because it had established "all elements of proof required to be met in order for [it] to recover on a [p]romissory [n]ote." SMS Financial produced the promissory note and established that the party being sued had signed the note, it was the owner or holder of the note, and a certain balance was due and owing on the note. Specifically, SMS

3

Financial was the owner and holder of the promissory note, as successor-in-interest to U.S. Bank, Smiley Dental had defaulted on the promissory note by failing to pay the principal balance and accrued interest, and Pham was personally liable on the promissory note indebtedness.

SMS Financial attached to its motion the affidavit of Jonathan Harris. In his affidavit, Harris testified that he is employed as a member/manager of SMS Financial and he had reviewed the promissory note dated December 1, 2012 and executed by Smiley Dental payable to U.S. Bank. According to Harris, as successor-in-interest to U.S. Bank, SMS Financial was the owner and holder of the promissory note and it was entitled to collect all monies due thereon. The promissory note was amended on August 8, 2013. The principal amount loaned under the promissory note was $234,900.09, to be repaid with interest at 5.75% per year at first, and at 5.80% per year after the amendment to the promissory note was executed. The maturity date of the promissory note indebtedness was June 10, 2014.

Harris also testified that Pham executed a continuing unlimited guaranty agreement on or about January 7, 2013. Under that agreement, Pham guaranteed payment of all debts of Smiley Dental to SMS Financial as successor-in-interest to U.S. Bank. This included the indebtedness evidenced by the promissory note. Pham also signed a reaffirmation of guaranty related to the amendment to the promissory note.

4

Harris further testified that Smiley Dental had entered into a business security agreement with U.S. Bank, under which it pledged as collateral for repayment of the promissory note its accounts receivable, chattel paper, general intangibles, contract rights, deposit accounts, inventory, and equipment.

According to Harris, Smiley Dental and Pham defaulted on the promissory note and its amendment along with the continuing unlimited guaranty agreement and its reaffirmation by failing to pay the entire principal balance and accrued interest on or before the June 10, 2014 maturity date and continuing until the present. Along with the maturity of the promissory note indebtedness, U.S. Bank foreclosed upon its security interest in the collateral described in the business security agreement and sold the collateral in a commercially reasonable manner for $20,000.00. The $20,000.00 received from the sale was applied toward the unpaid balance on the promissory note, but a deficiency balance remained.

Harris testified that as of September 23, 2014, an unpaid principal balance of $196,599.25 and accrued unpaid interest of $19,075.10 remained. And after September 23, 2014, more daily interest of $31.24 had accrued. Yet, Smiley Dental and Pham refused to pay SMS Financial, as successor-in-interest to U.S. Bank.

Finally, Harris testified that he had personally reviewed the business records of SMS Financial, as successor-in-interest to U.S. Bank, for its account with Smiley Dental and Pham. The data in the business records was regularly kept and

5

maintained in the usual course of SMS Financial's business, as successor-in-interest to U.S. Bank, and was recorded at or near the time of the events contained therein, was recorded by employees of SMS Financial, as successor-in-interest to U.S Bank, with personal knowledge of such events taking place, and it was the regular practice of SMS Financial's business, as successor-in-interest to U.S. Bank, to record and maintain such business records and data compilations for all of its customers.

Attached to Harris's affidavit were these exhibits, which Harris testified constituted true and correct copies:

- Exhibit A, the promissory note dated December 1, 2012 and executed by Smiley Dental;

- Exhibit B, the amendment to the promissory note dated August 8, 2013 and executed by Smiley Dental;

- Exhibit C, the continuing unlimited guaranty agreement dated January 7, 2013 and executed by Pham;

- Exhibit D, the reaffirmation of guaranty dated August 8, 2013 and executed by Pham;

- Exhibit E, the business security agreement dated December 1, 2012 and executed by Smiley Dental;

- Exhibit F, the purchase agreement and bill of sale dated April 17, 2014 and related to the sale of the collateral; and

- Exhibit G, the pre-suit demand letter from SMS Financial.

In response, appellants objected to the affidavit of Harris, asserting that Harris did not have "personal knowledge of the facts necessary to support [the] [m]otion,"

6

the affidavit contained hearsay, Harris could not authenticate the exhibits attached to his affidavit, and the statements in the affidavit lacked evidentiary foundation. Appellants also asserted that SMS Financial was not entitled to judgment on its claim to collect on the promissory note because its motion was not supported by admissible summary-judgment evidence and it could not show that its collateral was disposed of in a commercially reasonable manner.[1]

In its reply, SMS Financial asserted, as for appellants' objections to its summary-judgment evidence, that "[a]n assignee creditor may properly execute a business records affidavit concerning record keeping by the assignee entity on accounts assigned to it," it was not necessary for U.S. Bank to verify the records attached to SMS Financial's summary-judgment motion, Harris's affidavit complied with Texas Rule of Evidence 902(10), and the exhibits attached to SMS Financial's summary-judgment motion did not contain inadmissible hearsay. SMS Financial also asserted that appellants waived their argument about commercial reasonableness because they failed to plead it.[2]

The trial court granted SMS Financial summary judgment.

---

[1]     *See* TEX. BUS. & COM. CODE ANN. §§ 9.610, 9.626(a)(2).

[2]     *See id.* § 9.626(a)(1).

**Objections to Summary-Judgment Evidence**

In their third issue, appellants argue that the trial court erred in overruling its objections to SMS Financial's summary-judgment evidence because Harris lacked personal knowledge of the facts stated in his affidavit, Harris's affidavit contained hearsay statements and statements that violated the best evidence rule, certain statements in Harris's affidavit were made without foundation, Harris could not authenticate the exhibits attached to his affidavit, Harris's affidavit did not establish a proper business records foundation, and the exhibits attached to Harris's affidavit constituted inadmissible hearsay.

We review a trial court's decision to admit or exclude summary-judgment evidence for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017); *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 893–94 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We will not reverse a trial court's erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

A party must present its summary-judgment evidence in a form that would be admissible at trial. *See* TEX. R. CIV. P. 166a(f); *Fortitude Energy, LLC v. Sooner*

*Pipe LLP*, 564 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Certain defects in summary-judgment evidence are defects in substance that a party may raise on appeal even if it failed to object or failed to secure an adverse ruling in the trial court. *Id.* Complaints about defects in form, however, must be presented to the trial court, and the complaining party must obtain a ruling on its objection. *Id.*; *see also Thibodeau v. Dodeka, LLC*, 436 S.W.3d 23, 27 (Tex. App.—Waco 2014, pet. denied) (complaining party must secure ruling on form objections to summary-judgment evidence at or before time trial court makes summary-judgment ruling or party fails to preserve complaint about objections for appellate review). The failure to obtain a ruling on an objection to a defect in form waives the objection. *See Pouncy-Pittman v. Pappadeaux Seafood Kitchen*, No. 01-07-00575-CV, 2008 WL 2930183, at *8 (Tex. App.—Houston [1st Dist.] July 31, 2008, no pet.) (mem. op.); *Harris ex rel. Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 897 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see also Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.). The mere granting of a summary-judgment motion "does not suffice as an implicit ruling on [any] objections" to the summary-judgment evidence. *Fortitude Energy*, 564 S.W.3d at 178 (internal quotations omitted).

The record does not reflect that the trial court ever ruled, either explicitly or implicitly, on appellants' objections to SMS Financial's summary-judgment

evidence. *See* TEX. R. APP. P. 33.1; *Fortitude Energy*, 564 S.W.3d at 178–79; *Delfino v. Perry Homes*, 223 S.W.3d 32, 34–35 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Yet, appellants on appeal complain that the trial court erred in overruling these objections to SMS Financial's summary-judgment evidence:

- Harris lacked personal knowledge of the facts stated in his affidavit;

- Harris's affidavit contained hearsay statements;

- Harris's affidavit contained statements that violated the best evidence rule;

- Certain statements in Harris's affidavit were made without foundation;

- Harris could not authenticate the exhibits attached to his affidavit;

- Harris's affidavit did not establish a proper business records foundation; and

- Exhibits A-F attached to Harris's affidavit constituted inadmissible hearsay.

All these objections are considered objections as to form, and as such, we hold that appellants have not preserved for our review any complaint that the trial court erred in not granting appellants' objections. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (lack of personal knowledge is defect in form); *UT Health Sci. Ctr.-Houston. v. Carver*, No. 01-16-01010-CV, 2018 WL 1473897, at *5–6 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op.) ("Formal defects include objections to hearsay, lack of foundation, lack of

personal knowledge, sham affidavit, statement of an interested witness that is not clear, positive direct, or free from contradiction, best evidence, self-serving statements, and unsubstantiated opinions."); *Cantu v. Frye & Assocs., PLLC*, No. 01-12-00868-CV, 2014 WL 2626439, at *7, *10 n.3 (Tex. App.—Houston [1st Dist.] June 12, 2014, no pet.) (mem. op.) (objections to hearsay, improper authentication, lack of foundation, and best evidence rule are defects in form which require ruling from trial court before being reviewed on appeal); *Calbert v. Assocs. Asset Mgmt., LLC*, No. 01-09-01062-CV, 2010 WL 2305862, at *3 (Tex. App.— Houston [1st Dist.] June 10, 2010, no pet.) (mem. op.) (objection that affidavit contained hearsay and did not meet business records exception waived by complaining party's failure to secure ruling).

We overrule appellants' third issue.

## Summary Judgment

In their second issue, appellants argue that the trial court erred in granting summary judgment in favor of SMS Financial on its claim to collect on the promissory note because SMS Financial relied on the affidavit of Harris, who had no personal knowledge of the facts that were essential to proving up SMS Financial's cause of action and SMS Financial's summary-judgment evidence did not include any facts or evidence that the trial court could review to conclude that SMS Financial had met its burden "to show that the disposition of its collateral was conducted in a

11

commercially reasonable manner." *See* TEX. BUS. & COM. CODE ANN. §§ 9.610, 9.626(a)(2).

We review a trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its claim, it must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Once the plaintiff meets its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Gutierrez v. Draheim*, No. 01-14-00267-CV, 2016 WL 921470, at *1 (Tex. App.—Houston [1st Dist.] Mar. 10, 2016, no pet.) (mem. op.). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When reviewing a

summary-judgment ruling, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To prevail on a summary-judgment motion, a plaintiff seeking to collect on a promissory note must prove: (1) the existence of the promissory note in question, (2) that the party sued signed the note, (3) that the plaintiff is the owner or holder of the note, and (4) that a certain balance is due and owing on the note. *Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

SMS Financial's summary-judgment evidence included the promissory note dated December 1, 2012 and executed by Smiley Dental, the amendment to the promissory note dated August 8, 2013 and executed by Smiley Dental, the continuing unlimited guaranty agreement dated January 7, 2013 and executed by Pham, the reaffirmation of guaranty dated August 8, 2013 and executed by Pham, the business security agreement dated December 1, 2012 and executed by Smiley Dental, and the purchase agreement and bill of sale dated April 17, 2014 and related to the sale of collateral.

Also included in SMS Financial's summary-judgment evidence is Harris's affidavit, in which he testified, as a member/manager of SMS Financial, that he had

reviewed the promissory note executed by Smiley Dental and payable to U.S. Bank. According to Harris, as successor-in-interest to U.S. Bank, SMS Financial was the owner and holder of the promissory note and entitled to collect all monies due thereon. *See Cha v. Branch Banking & Tr. Co.*, No. 05-14-00926-CV, 2015 WL 5013700, at *2–3 (Tex. App.—Dallas Aug. 25, 2015, pet. denied) (mem. op.) ("[A]ffidavit testimony together with a true and correct copy of a note proves ownership for summary judgment purposes."); *Leavings*, 175 S.W.3d at 312. The promissory note was amended on August 8, 2013. The principal amount loaned under the promissory note was $234,900.09, to be repaid with interest at 5.75% per year at first, and at 5.80% per year after the amendment to the promissory note was executed. The maturity date of the promissory note indebtedness was June 10, 2014.

Harris further testified that Pham executed a continuing unlimited guaranty agreement on or about January 7, 2013 under which she guaranteed payment of all debts of Smiley Dental to SMS Financial as successor-in-interest to U.S. Bank. This included the indebtedness evidenced by the promissory note. Pham signed a reaffirmation of guaranty related to the amendment to the promissory note. Smiley Dental also entered into a business security agreement with U.S. Bank, under which it pledged as collateral for repayment of the promissory note its accounts receivable, chattel paper, general intangibles, contract rights, deposit accounts, inventory, and equipment.

According to Harris, Smiley Dental and Pham defaulted on the promissory note and its amendment along with the continuing unlimited guaranty agreement and its reaffirmation by failing to pay the entire principal amount and accrued interest on or before the June 10, 2014 maturity date and continuing until the present. Along with the maturity of the promissory note indebtedness, U.S. Bank foreclosed upon its security interest in the collateral described in the business security agreement and sold the collateral in a commercially reasonable manner for $20,000.00. The $20,000.00 received from the sale was applied toward the unpaid balance on the promissory note, but a deficiency balance remained.

Harris testified that as of September 23, 2014, an unpaid principal balance of $196,599.25 and accrued unpaid interest of $19,075.10 remained. And after September 23, 2014, more daily interest of $31.24 had accrued. Yet, Smiley Dental and Pham refused to pay SMS Financial, as successor-in-interest to U.S. Bank.

On appeal, appellants first argue that SMS Financial did not prove that it was entitled to judgment as a matter of law on its claim to collect on the promissory note because Harris lacked personal knowledge of the "facts that were essential to proving up [SMS Financial's] case." However, we have already held that appellants have not preserved their complaint that Harris lacked personal knowledge of the facts stated in his affidavit. *See Vaughan*, 792 S.W.2d at 945; *Carver*, 2018 WL 1473897, at *5–6.

15

Appellants next argue that SMS Financial did not prove that it was entitled to judgment as a matter of law on its claim to collect on the promissory note because it failed "to show that the disposition of its collateral was conducted in a commercially reasonable manner." *See* TEX. BUS. & COM. CODE ANN. §§ 9.610, 9.626(a)(2).

Chapter 9 of the Texas Uniform Commercial Code provides that when a debtor defaults on an obligation, a secured party may take possession of collateral, dispose of it, and apply the proceeds to help satisfy the debtor's obligation. *See id.* §§ 9.609, 9.610, 9.615; *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 596–97 (Tex. 2010) *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 647 (Tex. App.—Houston [14th Dist.] 2012, no pet.). But "[a]fter default, . . . [e]very aspect of a disposition of [the] collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." *Id.* § 9.610(a), (b); *Regal Fin. Co.*, 355 S.W.3d at 597, 599; *see also id.* § 9.627 ("Determination of Whether Conduct was Commercially Reasonable").

If the proceeds from the disposition of collateral cannot satisfy the obligation, the secured party may want to obtain a deficiency judgment for the amount still owing on the debtor's obligation. *See Foley*, 383 S.W.3d at 647. But "[i]n an action arising from a [non-consumer] transaction,[3] . . . in which the amount of a deficiency . . . is in issue," "[i]f the secured party's compliance is placed in issue,

---

[3] Appellants do not dispute that this case involves a non-consumer transaction.

16

the secured party has the burden of establishing that the . . . disposition . . . was conducted in accordance with" Chapter 9. TEX. BUS. & COM. CODE ANN. § 9.626(a)(2). This includes the burden of establishing that the disposition of collateral was commercially reasonable. *Id.* § 9.610(a), (b).

Notably though, "[a] secured party need *not* prove compliance with" Chapter 9, including the establishment of commercial reasonableness related to the disposition of collateral, "unless the debtor . . . places the secured party's compliance in issue." *Id.* § 9.626(a)(1) (emphasis added); *see also id.* § 9.626 cmt. 3 (section 9.626(a) creates rebuttable presumption for non-consumer transactions that secured party complied with Chapter 9, so generally secured party need not prove compliance with relevant provisions of Chapter 9 as part of its prima facie case); *id.* § 9.626 2019 STATE BAR COMM. CMT. (section 9.626(a) overturned prior Texas law that provided absolute bar under which non-compliant secured party could not recover on any deficiency); *PlainsCapital Bank v. Jani*, No. 02-14-00149-CV, 2015 WL 7303934, at \*4 (Tex. App.—Fort Worth Nov. 19, 2015, pet. denied) (mem. op., not designated for publication) (only when secured party's compliance placed in issue does it have burden of establishing disposition of collateral was commercially reasonable). A debtor puts the commercial reasonableness of the secured party's disposition of collateral at issue by using the trial court's rules of pleading and practice. *See* TEX. BUS. & COM. CODE ANN.

§ 9.626 cmt. 3; *Harton v. First Victoria Nat'l Bank*, No. 13-10-00371-CV, 2011 WL 1935605, at *5 (Tex. App.—Corpus Christi–Edinburg May 19, 2011, pet. denied) (mem. op.); *Lister v. Lee-Swofford Invs., L.L.P.*, 195 S.W.3d 746, 748 (Tex. App.—Amarillo 2006, no pet.) (debtors' pleadings raised issue of commercial reasonableness of sale of collateral, which caused secured party to bear burden of proving commercial reasonableness); *see also* TEX. R. CIV. P. 45(a), (b) (defendant's answer must state in plain and concise language grounds for any defense alleged); *Greathouse v. Charter Nat'l Bank-Sw.*, 851 S.W.2d 173, 176–77 (Tex. 1992) (expressing common-law rule in consumer transaction;[4] proof of commercial reasonableness of disposition of collateral not required in every case, only when issue placed in dispute by denying commercial reasonableness in answer). In other words, a debtor places the secured party's compliance in issue by pleading, in its answer, that the collateral was not disposed of in a commercially reasonable manner. *See Jani*, 2015 WL 7303934, at *2, *4 (defendant placed secured party's compliance in issue where he alleged in answer that secured party had not disposed of collateral in commercially reasonable manner); *Jantzen v. Am. Nat'l Bank of Tex., N.A.*, 300 S.W.3d 412, 414 (Tex. App.—Dallas 2009, pet. denied) (noting specific pleading requirement); *see also* TEX. R. CIV. P. 45(a), (b); *Harton*, 2011 WL 1935605, at *5

---

[4] *See* TEX. BUS. & COM. CODE ANN. § 9.102(a)(26) (defining "[c]onsumer transaction" (internal quotations omitted)).

(lack of commercial reasonableness must be pleaded in accordance with Texas Rule Civil Procedure 45).

In their answer, appellants generally pleaded the affirmative defenses of accord and satisfaction, estoppel, failure of consideration, laches, payment, and offset. But they did not assert non-compliance with Texas Uniform Commercial Code Chapter 9 or that the disposition of the collateral by SMS Financial, as successor-in-interest to U.S. Bank, was not done in a commercially reasonable way. *See* TEX. BUS. & COM. CODE ANN. § 9.626 cmt. 3 (section 9.626(a) creates rebuttable presumption for non-consumer transactions that secured party complied with Chapter 9, so secured party generally need not prove compliance with relevant provisions of subchapter as part of its prima facie case); *Jantzen*, 300 S.W.3d at 414 (after bank sued to collect remaining balance due on promissory note after application of proceeds from sale of collateral, defendant answered that collateral "had not been sold in a commercially reasonable manner"); *see also* TEX. R. CIV. P. 45(a), (b); *Harton*, 2011 WL 1935605, at *5. Thus, because appellants failed to place SMS Financial's compliance with the commercial reasonableness standard "in issue," SMS Financial did not have to prove commercial reasonableness to prevail on summary judgment.[5] *See* TEX. BUS. & COM. CODE ANN. § 9.626(a)(1); *see also*

---

[5] Even if SMS Financial provided summary-judgment evidence that the sale of collateral was commercially reasonable, this does not mean that SMS Financial was required to prove that the disposition of collateral was commercially reasonable in

*Palestine Water Well Serv., Inc. v. Wash. Int'l Ins., Co.*, Civil Action No. DR: 15-CV-016-AM-CW, 2015 WL 12910046, at *15 (W.D. Tex. Sept. 30, 2015) (order) (section 9.626 establishes when secured party has burden to establish commercial reasonableness); *Foley*, 383 S.W.3d at 647 (section 9.626(a) controls burden of establishing commercial reasonableness for non-consumer transactions); *cf. Jantzen*, 300 S.W.3d at 413–16 (reviewing bank's summary-judgment evidence to determine whether it met its burden of proof on issue of commercial reasonableness only after defendant raised issue in answer).

For these reasons, we hold that the trial court did not err in granting SMS Financial summary judgment.

We overrule appellants' second issue.

Appellants' first issue, in which they globally assert that the trial court erred in entering a final judgment in favor of SMS Financial, is subsumed in our discussion of appellants' second and third issues. *See* TEX. R. APP. P. 47.1.

---

order to prevail on summary judgment. *See Hallman v. Nationsbank of Tex., N.A.*, No. 01-94-00813-CV, 1995 WL 489152, at *2 (Tex. App.—Houston [1st Dist.] Aug. 17, 1995, no pet.) (not designated for publication).

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.