COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| FRONTIER NANOSYSTEMS, LLC AND L. PIERRE DE ROCHEMONT, | § | No. 08-22-00136-CV |
| | § | Appeal from the |
| Appellants, | § | 333rd Judicial District Court |
| v. | § | of Llano County, Texas |
| CLEVELAND TERRAZAS PLLC AND KEVIN J. TERRAZAS, | § | (TC# 21775) |
| Appellees. | | |

## **MEMORANDUM OPINION**

Appellants, Frontier NanoSystems, LLC (Frontier) and L. Pierre de Rochemont, appeal from a grant of summary judgment and a dismissal of their counterclaims in favor of Appellees, Cleveland Terrazas, PLLC (the Firm) and Kevin Terrazas.[1] Appellants raise three issues on appeal: (1) the trial court erred in dismissing de Rochemont's counterclaims pursuant to the Texas Citizens Participation Act (TCPA); (2) the trial court erred in granting the Firm's motion for summary judgment against both Appellants; and (3) Frontier's and de Rochemont's legal status

---

[1] This case was transferred from the Third Court of Appeals pursuant to a Supreme Court of Texas docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

changes void the trial court's ruling.[2] We affirm the trial court's judgment for the following reasons.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 3, 2021, the Firm filed its original petition against Appellants alleging breach of contract, quantum meruit, and fraud.[3] In the petition, the Firm alleged that on June 8, 2017, it entered into a written agreement with Appellants to provide legal services. The agreement was executed between Cleveland Terrazas, PLLC; Frontier; and de Rochemont, individually. The Firm alleged that Appellants failed to pay invoices and fees in the amount of $166,261.91. Appellees further alleged that Appellants fraudulently made false representations that they would pay for the services, knowing they could not do so.

On May 28, 2021, de Rochemont filed an original answer, third party action, and counterclaim. In this pleading, de Rochemont entered a general denial, named Terrazas as a third-party defendant, asserted estoppel and breach of fiduciary duty as affirmative defenses, and raised piercing the corporate veil and tortious interference as counterclaims.[4] De Rochemont signed his

---

[2] Appellants' original answer and counterclaims were filed May 28, 2021, by de Rochemont acting pro se and on behalf of Frontier as its general manager. On July 30, 2021, Frontier filed an original answer through counsel. On August 12, 2021, the trial court held a hearing on Appellees' motion to dismiss and the Firm's motion for summary judgment and motion for default judgment. Frontier appeared through counsel at the hearing. Appellant de Rochemont proceeded pro se. Both Appellants are represented by the same counsel in this appeal. When we address issues applying to only one appellant, we address that party by name. When an issue applies to both, we address them as Appellants.

[3] After the trial court granted Appellees' TCPA motion to dismiss de Rochemont's counterclaims and motion for summary judgment against Frontier and de Rochemont, the Firm nonsuited the remaining fraud claim without prejudice. The Firm pleaded its quantum meruit claim in the alternative.

[4] After Terrazas was joined as a third-party defendant to de Rochemont's counterclaims, the Firm and Terrazas filed some combined motions. When a filing applies to both, we refer to them as Appellees. When a filing applies to only one party, we refer to them by name.

pleading individually and as general manager for Frontier.[5] Appellees filed an original answer entering a general denial and asserting other affirmative defenses not relevant to this appeal.

On June 28, 2021, Appellees filed a motion to dismiss de Rochemont's counterclaims pursuant to the TCPA, and the Firm filed a motion for summary judgment against both de Rochemont and Frontier on its breach-of-contract claim. On July 30, 2021, Frontier, now represented by counsel, filed an original answer entering a general denial and asserting estoppel as an affirmative defense. The trial court held a combined hearing on the TCPA motion to dismiss and the motion for summary judgment on August 12, 2021. Frontier appeared through counsel, and de Rochemont appeared individually. After the hearing, Frontier filed a reply to the motion for summary judgment, again asserting estoppel as an affirmative defense.[6]

On August 31, 2021, the trial court entered an amended order granting Appellees' TCPA motion to dismiss. In the order, the trial court found that de Rochemont's counterclaims were based on or in response to Appellees' exercise of the right of free speech on a matter of public concern and exercise of the right to petition. It further found that de Rochemont failed to establish by clear and specific evidence a prima facie case for each essential element of his alter ego and tortious interference counterclaims. On September 13, 2021, the trial court granted the Firm's motion for traditional summary judgment on its breach-of-contract claim, awarding it $169,810.78 in actual damages. The Firm then nonsuited its remaining fraud claim, and the trial court entered a final judgment on March 28, 2022.

---

[5] At the time of de Rochemont's original answer, Frontier was not represented by counsel. Although he purported to represent Frontier, he lacked the authority to assert claims on behalf of and represent the entity. *See e.g., McClane v. New Caney Oaks Apartments*, 416 S.W.3d 115, 120 (Tex. App.—Beaumont 2013, no pet.) (stating the general rule that "a corporation may be represented only by a licensed attorney," and a non-lawyer corporate representative may only perform "ministerial" tasks).

[6] The trial court granted Frontier leave to respond to the summary judgment motion.

Appellants filed various post-judgment motions, including a motion to take judicial notice and a motion for findings of fact following their changes in legal status. In this motion, Appellants asked the trial court to take judicial notice that de Rochemont was no longer a United States citizen, and Frontier was no longer an active company as of September 15, 2021. The trial court granted Appellants' motion, and this joint appeal followed. [7]

Raising three issues on appeal, Appellants contend: (1) the trial court erred by granting Appellees' TCPA motion to dismiss; (2) the trial court erred by granting the Firm's summary judgment motion; and (3) the judgment is void because Frontier's and de Rochemont's legal statuses changed. We address the issues in the order presented.

## II. GRANT OF TCPA MOTION TO DISMISS DE ROCHEMONT'S COUNTERCLAIMS

In de Rochemont's first issue, he contends the trial court erred in dismissing his counterclaims pursuant to the TCPA.

### A. Applicable law and standard of review

"The TCPA was designed to protect both a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries the defendant caused." *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.002); *Szymonek v. Guzman*, 641 S.W.3d 553, 564 (Tex. App.—Austin 2022, pet. denied). To effectuate this purpose, the TCPA provides a three-step burden-shifting framework to determine whether a legal action should be dismissed. *Montelongo*, 622 S.W.3d at 295-96. The TCPA defines "[l]egal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or

---

[7] An attached document indicates that de Rochemont "opted to change his legal status from U.S. Citizen to U.S. National." We make no comment on the evidence attached in support of the motion for judicial notice.

counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6). Here, de Rochemont's counterclaims are at issue.

In the first step of the burden-shifting framework, the party seeking dismissal under the TCPA must demonstrate that the claimant's "legal action is based on or is in response to" a party's exercise of the right of free speech, right to petition, or right of association. *Id*. § 27.005(b). As pertinent to this appeal, the TCPA defines "[e]xercise of the right to petition" as "a communication in or pertaining to . . . a judicial proceeding." *Id*. § 27.001(4)(A)(i). The TCPA defines "[c]ommunication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). If the movant meets its initial burden, the second step of the burden-shifting framework requires the claimant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question" to avoid dismissal. *Id*. § 27.005(c). Finally, if the claimant establishes a prima facie case by clear and specific evidence, the court must nonetheless dismiss the legal action if the movant establishes an affirmative defense that entitles it to judgment as a matter of law. *Id.* § 27.005(d).

We review whether the parties have met their respective burdens de novo. *Wendt v. Weinman & Assocs. P.C.*, 595 S.W.3d 926, 928 (Tex. App.—Austin 2020, no pet.); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). Under the de novo standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Hart v. Manriquez Holdings, LLC.*, 661 S.W.3d 432, 437 (Tex. App.—Houston [14 Dist.], no pet) (quoting *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.— Houston [14th Dist.] 2017, no pet.)). We consider "the pleadings . . . and supporting

and opposing affidavits stating the facts on which the liability or defense is based." Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 27.006(a). In reviewing TCPA rulings, the Supreme Court of Texas has observed that "the [claimant's] petition . . . is the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). And we must view the pleadings and evidence in the light most favorable to the nonmovant. *See Youngblood v. Zaccaria*, 608 S.W.3d 134, 137 (Tex. App.—San Antonio 2020, pet. denied).

### B.  De Rochemont's counterclaims

In de Rochemont's original answer and counterclaim, he listed two counterclaims: piercing the veil and tortious interference.[8] On appeal, de Rochemont now argues that his counterclaims consist of breach of contract and tortious interference. Appellees respond that de Rochemont never asserted a counterclaim for breach of contract in the trial court and has thus waived the issue for our review. Instead, Appellees contend that de Rochemont's counterclaim is tortious interference. We address de Rochemont's breach of contract and tortious interference points in turn.[9]

---

[8] We note that the amended order granting Appellees' motion to dismiss under the TCPA refers to de Rochemont's counterclaims as "Alter Ego and Tortious Interference." We do not opine on whether de Rochemont sufficiently raised alter ego in his original answer and counterclaim because both arguments have been abandoned on appeal. *See Fields v. City of Tex. City*, 864 S.W.2d 66, 68 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (refusing to consider arguments raised in trial court but abandoned on appeal).

[9] Both parties agree that de Rochemont successfully pleaded a tortious interference counterclaim. However, de Rochemont's briefing inconsistently refers to his remaining counterclaim as legal malpractice, breach of fiduciary duty, and breach of contract. We refer to this counterclaim as breach of contract in this opinion based on the substance of the assertions in the briefing, and we analyze whether de Rochemont successfully pleaded breach of contract below based on the substance of his filings in the trial court. *See In re Breviloba, LLC*, 650 S.W.3d 508, 512 (Tex. 2022) (instructing courts to evaluate a claim in a pleading by the "nature" and "gravamen" regardless of the style or the remedies sought) (citing *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017). As our analysis will later show, de Rochemont has taken multiple fragmented allegations from his pleadings below and attempted to construe them as a single breach-of-contract claim on appeal. Doing so conflates the issues, and we analyze them only to provide clarity and ascertain what claims were adequately pleaded below and preserved for our review.

### (1)   *Breach of contract counterclaim not preserved*

"A plaintiff sufficiently pleads a cause of action when the elements of the claim and the relief sought may be discerned from the pleadings alone." *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021). Texas follows a "fair notice" pleading standard, which examines the contents of the pleading to determine whether the opposing party is able to ascertain the nature of the controversy and what testimony and evidence will be necessary. *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018) (per curiam) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Horizon*, 34 S.W.3d at 897. Courts look to the substance of the pleadings and will uphold a claim even if an element has not been specifically alleged—if the element can be reasonably inferred from the contents of the pleading. *Woolam v. Tussing*, 54 S.W.3d 442, 448 (Tex. App.—Corpus Christi 2001, no pet.). "A pleading may fail to give fair notice because of ambiguous language which does not clearly convey the pleader's contentions, or because its allegations, though clearly expressed, may mislead the opponent concerning the theory on which the pleader proposes to rely." *City of Houston v. Howard*, 786 S.W.2d 391, 393 (Tex. App.—Houston 1990, writ denied). An opposing party should file special exceptions in response to "legally or factually infirm pleading[s]." *Brumley*, 616 S.W.3d at 831 (citing TEX. R. CIV. P. 91). Courts liberally construe petitions in favor of the pleader in the absence of special exceptions. *Id*.

De Rochemont filed his original answer and response to Appellees' motion to dismiss pro se, and Appellees did not file special exceptions to de Rochemont's pleadings. Accordingly, we construe de Rochemont's pleadings liberally and in his favor. *Id.*; *Veigel v. Texas Boll Weevil Eradication Found., Inc.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.) (noting that

7

pro se pleadings are also construed liberally and with patience, but not so liberally as to create an advantage for pro se parties). On appeal, de Rochemont now contends that his piercing-the-veil counterclaim raised in his amended answer sounded in breach of contract. We look to the substance of his claims to determine whether de Rochemont adequately pleaded a breach-of-contract counterclaim. *See In re Breviloba, LLC*, 650 S.W.3d 508, 512 (Tex. 2022) (per curiam) ("We are guided by the 'nature' and 'gravamen' of a claim, not how the claim is artfully pleaded or recast.") (citing *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017).

A petition for breach of contract must allege facts showing: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)).

The allegations in de Rochemont's pleadings center around various actors, both known and unknown, and the ways in which these actors have interfered with his ability to raise sufficient capital for Frontier. [10] The pleadings state that de Rochemont entered into a contractual "attorney/client relationship" with Appellees, who then "nefariously interfered" with de Rochemont's business interests by providing a "weak defense" to the underlying SLAPP litigation and arbitration. [11] The pleadings also allege that Appellees refused to file multiple writs of

---

[10] Because the various third parties named by de Rochemont in his pleadings are not parties to this suit, we do not address the allegations or parties individually. We only note that the allegations support our conclusion that the primary counterclaim in de Rochemont's pleadings is tortious interference.

[11] We note that de Rochemont does mention breach of contract in his pleadings. However, these instances refer to the underlying litigation involving the employment contract dispute and SLAPP litigation for which de Rochemont and

mandamus, purposefully provided poor services to Appellants to serve their own personal interests, failed to curtail any risk of "high-level cyber-warfare" to Appellants, and breached a fiduciary duty by allowing legal fees to accumulate in a "legally irrelevant proceeding[]." The allegations further include that Appellees violated ethical standards and knowingly misrepresented to the trial court and to potential third parties that de Rochemont owed money to Appellees and never intended to pay it.

A common thread throughout de Rochemont's pleadings is the allegation that Appellees' and various third parties' actions constitute tortious interference, which has hindered de Rochemont's ability to "engage in business and raise the capital needed to fulfill [] debt obligations." De Rochemont refers to Appellees' actions as "[part of] or as a larger component of institutionalized lawfare . . .[.]" On more than one occasion, the pleadings identify acts by the Appellees that de Rochemont's pleadings clearly interpret and allege as tortious interference, not as a breach of contract. For example, de Rochemont's amended answer and counterclaim alleges that Appellees revealed privileged information to a potential investor, "an act of tortious interference." [12] Another allegation focuses on Terrazas, claiming he circulated disparaging

---

Frontier procured Appellees' services. For example, he states that "[Appellants] in no way breached the contract that formed the basis for the SLAPP lawsuit."

[12] De Rochemont's amended pleadings allege Terrazas revealed privileged information to an investor, which resulted in the loss of business from that investor. It is not clear from the pleadings what privileged information de Rochemont believes Terrazas revealed to that or any potential investor. Construing his pro se pleadings liberally and with patience, we conclude that de Rochemont alleges Terrazas told other investors and third parties that de Rochemont and Frontier owed the Firm for legal services.

In large part, de Rochemont's amended answer and its references to privileged information are in response to a judicial-proceedings privilege argument Appellees advanced in their TCPA motion to dismiss. We do not opine on the issue of privilege because Appellants have not raised it as an independent issue on appeal and that analysis is unnecessary to the disposition of the appeal. TEX. R. APP. P. 47.1.

9

information about de Rochemont to potential investors to nefariously interfere with de Rochemont's ability to raise adequate funding.[13]

Finally, de Rochemont's pleadings allege multiple times that filing the original petition was, on its own, an act of tortious interference because the petition was filed "just three weeks after [de Rochemont and Frontier] had concluded a $25 million placement agreement with a concern in Geneva, Switzerland." De Rochemont's pleadings allege that the "Original Petition and multiple Motions to Dismiss are further examples of nefarious conduct, breach of fiduciary duty to a client, and tortious interference . . .[.]"[14] The amended pleadings ask the trial court to consider the "Original Petition as prima facie evidence of attempted lawfare and tortious interference."

Construing the allegations liberally in de Rochemont's favor, we conclude that the pleadings do not provide fair notice of a breach-of-contract counterclaim and do not support the position de Rochemont now advances on appeal.[15] In Appellants' combined brief, de Rochemont contends that Appellees "failed to make arguments that should have been made [in arbitration and during Appellees' representation of Appellants] and drove up litigation cost unnecessarily . . . ." De Rochemont asserts that "[Appellees'] actions constitute a breach of contract and ended the [contractual] relationship." These are not arguments he advanced below in the trial court. Although

---

[13] Included with de Rochemont's amended answer is the affidavit of Allen B. Clark. In the affidavit, Clark avers that an Adam Kraft informed him that "an attorney in Austin, Tx. had indicated to Kraft that de Rochemont 'owed money and had a debt.'" However, Clark did not inquire further, and the affidavit does not indicate who the attorney in Austin was or to whom de Rochemont owed a debt.

[14] De Rochemont's allegations appear to implicate both Terrazas and the Firm. However, the original petition was filed by the Firm, and the motion to dismiss was filed jointly by both Appellees.

[15] At the hearing on the motion to dismiss, de Rochemont made statements that directly conflict with the of breach-of-contract theory he now advances in this Court. Specifically, de Rochemont previously admitted that the debt for Appellees' legal services "would have been paid in full had [Appellees'] suit not been filed." This admission does not support de Rochemont's current contention that Appellees breached the Agreement; it supports the opposite conclusion that a valid contract exists and that de Rochemont is the non-performing party.

the pleadings do indicate that the parties had a contractual relationship, de Rochemont does not provide a copy of the contract, discuss the terms, or allege that Appellees breached any term of the agreement. [16] The pleadings only allege that Terrazas permitted "prolonged legal proceedings to occur, including arbitration and refusing to file a writ of mandamus when requested." *See Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 890 (articulating breach-of-contract elements). Our review of the allegations reveals that the breach of contract claim is, in substance, a claim for tortious interference.[17] Thus, de Rochemont's contentions relating to breach of contract are not preserved.

### (2) *Tortious interference counterclaim*

We now address de Rochemont's contention that the trial court erred in dismissing his tortious interference counterclaim pursuant to the TCPA.

### (a) *Step one in the burden-shifting framework*

We first consider whether Appellees demonstrated that de Rochemont's counterclaim was based on or in response to one of their protected rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003, 27.005(b). A legal action is based on or in response to a party's exercise of a right protected by the TCPA if it is factually predicated upon the exercise of the right. *See Grant v. Pivot Technology Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied) (citing to a

---

[16] Appellees provided the agreement as part of their summary judgment evidence.

[17] As we have previously mentioned, de Rochemont's briefing inconsistently refers to his counterclaims as legal malpractice, breach of fiduciary duty, and breach of contract. To the extent that de Rochemont asserts that his counterclaim sounds in any combination of these theories, our conclusion is consistent with the Austin Court of Appeals, which holds against "fractured" causes of action. *See e.g.*, *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426–27 (Tex. App.—Austin 2009, no pet.) (discussing fractured causes of action arising out of bad legal advice or poor representation and concluding that such claims are improperly fractured into separate claims for negligence, breach of contract, or fraud); *see also K&L Gates LLP v. Quantum Materials Corp.*, No. 03-19-00138-CV, 2020 WL 1313733, at *3 (Tex. App.—Austin Mar. 20, 2020, pet. pending) (mem. op.) (collecting cases and noting that parties often confuse legal malpractice claims with other causes of action like breach of contract, DTPA, or breach of fiduciary duty).

11

prior version of the TCPA which read "based on, relates to, or is in response to"); *see also Cavin v. Abbott*, 545 S.W.3d 47, 58 (Tex. App.—Austin 2017, pet. denied) ("[The phrase "based on or in response to"] serves to capture, at a minimum, a 'legal action' that is factually predicated upon alleged conduct that would fall within the TCPA's [protections.]"). Relevant to this appeal, the TCPA defines the "[e]xercise of the right to petition" as "a communication in or pertaining to a judicial proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i). The TCPA defines "[c]ommunication" as "the making or submitting of a statement or document in any form." *Id*. § 27.001(1).

De Rochemont contends that Appellees did not meet their burden to demonstrate that his counterclaim was based on or related to Appellees' right to petition or right to speech because the TCPA motion to dismiss "failed to address the specific counterclaims and affirmative defenses" and the asserted counterclaim is not subject to the TCPA."[18] Appellees alleged in their TCPA motion to dismiss that de Rochemont's counterclaim was based on and in response to their right to petition and right of free speech. Specifically, Appellees alleged that de Rochemont's counterclaim was based on (1) statements made during an arbitration proceeding, which Appellees asserted fell under the right to petition and (2) Terrazas's allegedly disparaging statements made to various third parties, which Appellees asserted fell under the right to free speech on a subject of public concern.[19]

---

[18] Appellants' brief repeatedly includes de Rochemont's affirmative defenses to Appellees' original breach-of-contract claim as part of the TCPA analysis. We decline to include these affirmative defenses in our analysis because an affirmative defense is not a "[l]egal action" as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (defining a legal action as a "lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim"). Additionally, because we have already concluded that breach of contract was not sufficiently pleaded or preserved, we refer to the singular tortious interference counterclaim in this section while Appellants' brief refers to multiple counterclaims.

[19] We do not opine on the merits of Appellees' allegations in the TCPA motion.

12

When ruling on a motion to dismiss, the TCPA provides that "the court shall consider the pleadings . . . and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). The "ultimate question" is whether the pleadings and other evidence demonstrate that the TCPA applies to the legal action subject to dismissal. *See Sloat v. Rathbun*, 513 S.W.3d 500, 503 (Tex. App.—Austin 2015, pet. dism'd) ("The ultimate question of whether a particular factual basis for a 'legal action' qualifies as expression within the TCPA's definitions is a question of law that [appellate courts] review de novo.") (citing *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.)).

Appellees, as the movants, had the initial burden to demonstrate that de Rochemont's tortious interference counterclaim was based on or in response to the exercise of their right to petition. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), 27.005(b). However, in some instances, a movant may meet the initial burden when it is clear on the face of the pleadings that the legal action subject to dismissal is covered by the TCPA. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see also Grant*, 556 S.W.3d at 880 (concluding, "from the face of the [claimant's] live petition," that the TCPA applied). Whether the TCPA applies depends on the basis of the legal action, and the basis of the legal action is determined by the claimant's allegations. *Hersh*, 526 S.W.3d at 467 ("The basis of a legal action [under the TCPA] is not determined by the [movant's] admissions or denials but by the [nonmovant's] allegations."). The petition is the 'best and all-sufficient evidence of the nature of the action.'" *Id*. (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)). Accordingly, the TCPA does not require courts to "cabin[] our TCPA analysis to the precise legal arguments or record references a moving party made to the trial court regarding the TCPA's applicability." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018).

13

From the face of de Rochemont's pleadings, we conclude that his counterclaim of tortious interference is based on and in response to the Firm's exercise of its right to petition.[20] Throughout the pleadings, de Rochemont states that the Firm's original petition "should readily be considered among [Appellees'] numerous and tortious acts." De Rochemont's pleadings go so far as to ask the trial court to consider the Firm's "Original Petition as prima facie evidence of attempted lawfare and tortious interference." Additionally, at the hearing on the motion to dismiss, de Rochemont stated that the fraud allegations in the original petition "put a halt on all financing objectives, that is tortiously interfering with our ability to raise capital and pay him back."

We conclude that the Firm's original petition is a communication made in a judicial proceeding. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i). The Firm exercised its right to petition by filing the original petition. *Id*. § 27.003(a). We further conclude that the allegations in de Rochemont's pleadings demonstrate, on the face of the pleadings, that his tortious interference counterclaim is a legal action that is based on or in response to the Firm's original petition. *Id*. § 27.005(b). Accordingly, the trial court did not err in finding that the TCPA applies to de Rochemont's counterclaims.

(b) *Step two in the burden-shifting framework*

Next, the TCPA analysis questions whether the legal action subject to dismissal has "sufficient indica of merit to proceed." *Collins v. Collins*, No. 01-17-00817-CV, 2018 WL 1320841, at *3 (Tex. App.—Houston [1st Dist.] Mar. 15, 2018, pet. denied) (mem. op., not

---

[20] Again, we recognize that the Firm filed its original petition and Terrazas was added as a third-party defendant later, but de Rochemont's pleadings do not always make this distinction—de Rochemont frequently refers to the Appellees together.

14

designed for publication).[21] A claimant may survive dismissal under the TCPA if it presents a prima facie case by establishing each essential element of the claim by clear and specific evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). If the claimant fails to meet the burden on any element, the whole claim fails. *Id*. De Rochemont contends that he established "each essential element of the claims in question," and the trial court erred in dismissing his counterclaim for tortious interference.[22]

### i. Prima facie case of tortious interference with a contract

The elements of tortious interference with a contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Serafine*, 466 S.W.3d at 361 (citing *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)). "[P]rima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). While the TCPA does not define "clear and specific evidence," the Supreme Court of Texas has defined "clear" as meaning "unambiguous, 'sure,' or 'free from doubt,' and

---

[21] De Rochemont contends in his appellate brief that the dismissal of his counterclaim violates his constitutional right to petition, his right to cross-examination, his right to seek legal redress, and his right to a trial by jury. We decline to address these arguments because the three-step burden-shifting framework of the TCPA protects these rights for claimants who successfully carry their burden to produce clear and specific evidence of a prima facie case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ("The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."). De Rochemont also contends that dismissal deprived him, as the nonmovant, of discovery. We disagree. Once a motion to dismiss is filed under the TCPA, all discovery is suspended until the trial court rules on the motion. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(c).

[22] Neither de Rochemont's pleadings nor his appellate brief specify the type of tortious interference at issue. We provide a brief analysis of tortious interference with contract and tortious interference with a business relationship, assuming but not deciding, that a liberal construction of de Rochemont's pro se pleadings in the trial court sufficiently stated a claim for both. *See Coca-Cola Co. v. Harmar Bottling Co.*,218 S.W.3d 671, 690 (Tex. 2006) (indicating that tortious interference with a contract and tortious interference with a business relationship are separate torts); *see also supra* II.B.i. (discussing pleading standards).

15

'specific' as 'explicit' or 'relating to a particular named thing.'" *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843 (Tex. 2018) (quoting *In re Lipsky*, 460 S.W.3d at 590). The clear and specific standard requires "enough detail to show the factual basis for [a] claim" but it does not "categorically reject circumstantial evidence" or "impose a higher burden of proof than that required of the plaintiff at trial." *In re Lipsky*, 460 S.W.3d at 591.

De Rochemont's pleadings allege that "Defendants had concluded a $25,000,000.00 placement agreement with a Swiss concern several weeks prior to [Appellees'] [o]riginal [p]etition, this court action taken against the Defendants this action [sic] should readily be considered among [Appellees'] numerous and tortious acts."[23] De Rochemont also alleges that the Appellees interfered with this agreement by filing the original petition, which included fraud allegations and caused the agreement to be placed "on hold." And because the agreement is on hold, de Rochemont alleges he has suffered damages "in excess of the minimum jurisdictional limits" of the trial court.

We begin with the first element of a tortious interference with contract claim—whether there is an existing contract subject to interference. *See Serafine*, 466 S.W.3d at 361. The above statements and allegations indicate a possible contract, but de Rochemont did not provide details about the specific terms of the contract or offer a copy of the contract or any other document indicating any agreement. *See Id*. at 361–62 (concluding that allegations about a contract without

---

[23] De Rochemont refers to this agreement throughout his pleadings and court appearances. In his amended answer and counterclaim, he refers to the agreement as a "signed" 25-million-dollar agreement but alleges it is now "on hold" because of the fraud allegation in the original petition. In his response to the TCPA motion to dismiss, he states that "Frontier NanoSystems, LLC had executed a $25M placement agreement with a financial concern based in Geneva, Switzerland." During the hearing on the motion to dismiss, he states "we were [negotiating] what looked to be initially a 25-million-dollar placement with a Swiss concern." His statements during the hearing indicate that the agreement was not signed but rather was still "in the throws [sic] of negotiations" and "still in the process" at the time the Firm filed its original petition.

details or terms was neither clear nor specific and did not establish a prima facie case for the contract element of a tortious interference with contract claim); *see also MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 199 (Tex. App.—El Paso 2017, no pet.) (holding that tortious interference requires proof of interference with a *specific* contract). De Rochemont refers to an agreement between "Defendants" and "a Swiss concern." While the defendants in this case are de Rochemont and Frontier, de Rochemont's pleadings and evidence are ambiguous as to whether he was a party to the purported agreement in his individual capacity.[24] And the most evidence we have in the record is an affidavit from de Rochemont produced by Frontier as summary judgment evidence averring Frontier, not de Rochemont himself, "had executed a $25M placement agreement with a financial concern based in Geneva, Switzerland."

Without more, de Rochemont did not meet his burden produce "evidence sufficient as a matter of law to establish a given fact." *See In re Lipsky*, 460 S.W.3d at 590. Accordingly, we conclude that de Rochemont failed to establish a prima facie case of tortious interference with a contract, and we need not consider the remaining elements.[25]

### ii. Prima facie case of tortious interference with a prospective business relationship

To establish a cause of action for tortious interference with prospective business relationship the claimant must establish "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted

---

[24] Although de Rochemont's pleadings are ambiguous, he has no authority to represent and assert an injury on Frontier's behalf. *See e.g.*, *McClane v. New Caney Oaks Apartments*, 416 S.W.3d 115, 120 (Tex. App.—Beaumont 2013, no pet.) (stating the general rule that "a corporation may be represented only by a licensed attorney," and a non-lawyer corporate representative may only perform "ministerial" tasks).

[25] De Rochemont's pleadings allege that Terrazas threatened to "make sure [Frontier] never gets financed." While this allegation may evidence a possible willful or intentional act of tortious interference with contract, we do not reach elements two through four because de Rochemont did not produce clear and specific evidence of element one.

17

with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

De Rochemont's pleadings allege that Terrazas used privileged information to "disparage" de Rochemont and Frontier, which interfered with "the Defendant's ability to conduct business and secure capital financing." De Rochemont further alleged that "Defendants" were negotiating and formalizing relationships with "West Pointers" in the Dallas-Fort Worth area and "defense appropriation offices in Washington, DC."[26] After Terrazas allegedly disclosed the privileged information, these potential relationships terminated. As evidence of Terrazas's interference, de Rochemont produced an affidavit from Allen B. Clark in which he avers that he spoke on the phone with his acquaintance, Adam Kraft, who informed Clark that "an attorney in Austin" told Kraft that de Rochemont "owed money and had a debt." The affidavit does not identify Terrazas. Although the pleadings allege that Terrazas is responsible for the disparagement campaign, de Rochemont informed the trial court during the hearing on the motion to dismiss that he could not say with certainty Terrazas was responsible. Instead, de Rochemont said that Terrazas "either knows or unknowingly [sic] that this is happening to our company."

The tortious interference with prospective business relationship claim fails for the same reasons as set forth above. As to the first element, the claimant must show there was a reasonable probability that the claimant would have entered into a business relationship with a third party.

---

[26] Terrazas is a West Point graduate, and de Rochemont's pleadings allege that he is associated with the "West Point mafia" and therefore politically connected to entities who de Rochemont also alleges have "blacklisted" Frontier and are circulating a "disparagement campaign" to prevent Frontier from receiving adequate capital funding.

*Coinmach Corp.*, 417 S.W.3d at 923. Evidence of a reasonable probability that the parties would have entered a relationship requires a showing that "more than mere negotiations occurred." *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). De Rochemont's pleadings and accompanying evidence do not identify with specificity any third party with whom *he* would have entered into a business relationship. *MVS Int'l Corp.*, 545 S.W.3d 200 (rejecting an affidavit that "lacks the sort of clear and specific details" required by the TCPA). Without identifying potential third parties or the type of prospective business relationships, de Rochemont did not meet his burden to produce "evidence sufficient as a matter of law to establish a given fact." *See In re Lipsky*, 460 S.W.3d at 590. Accordingly, we conclude that de Rochemont failed to establish a prima facie case of tortious interference with prospective business, and we need not consider the remaining elements.

### C. Conclusion

Because de Rochemont did not establish a prima facie case for either type of tortious interference counterclaim, the trial court did not err in dismissing his counterclaims pursuant to the TCPA. We overrule Appellants' first issue.

## III. GRANT OF SUMMARY JUDGMENT MOTION ON BREACH-OF-CONTRACT CLAIM

In Appellants' second issue, they argue the trial court erred in granting summary judgment in favor of Appellants on their breach-of-contact claim.[27]

---

[27] Appellants' briefing cites to no-evidence standards and case law, however, the Firm's motion sought traditional summary judgment and the trial court's order specifically states that it granted the motion on traditional grounds. Accordingly, we do not address Appellants' no-evidence arguments.

### A. Standard of review

An appellate court reviews a trial court's grant of summary judgment de novo. *See e.g.*, *Eagle Oil & Gas Co. v. TRO-X, L.P.*,619 S.W.3d 699, 705 (Tex. 2021) (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). To prevail on a traditional summary-judgment motion, a movant must demonstrate that there are no genuine issues of material fact as to any elements of his claim and that he is entitled to judgment as a matter of law. *See 1320/1390 Don Haskins, Ltd. v. Xerox Com. Sols., LLC*, 584 S.W.3d 53, 62 (Tex. App.—El Paso 2018, pet. denied) (citing TEX. R. CIV. P. 166a(c)). When the movant meets that burden, the burden then shifts to the nonmovant to disprove or raise an issue of fact as to at least one of the elements. *Id*. (citing *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)). An affirmative defense will defeat a traditional motion for summary judgment if the nonmovant raises a genuine issue of fact as to each element of the affirmative defense. *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "A plaintiff moving for summary judgment is not under any obligation to negate affirmative defenses." *Id*.

A genuine issue of material fact exists if the evidence "would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont.v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Conclusory statements are insufficient to raise a fact issue to defeat summary judgment. *Fortitude Energy, LLC*, 564 S.W.3d at 183. We review the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Eagle Oil & Gas Co.*, 619 S.W.3d at 705 (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007)). Summary judgment is proper if the nonmovant does not raise a fact issue on any element of a claim. *See 1320/1390 Don Haskins, Ltd.*, 584 S.W.3d at 62. And a court of appeals cannot affirm a summary judgment on a ground not

expressly presented in the motion for summary judgment. *See Rise Above Steel Co., LLC v. Liberty Mutual Ins. Co.*, 656 S.W.3d 577, 581 (Tex. App.—El Paso 2022, no pet.).

### B. The Firm's summary judgment motion and evidence

The Firm moved for summary judgment on the grounds that no issue of material fact existed concerning (1) the existence of the contract, (2) the Firm's performance under the contract, (3) Appellants' failure to pay for services rendered, and (4) damages resulting from Appellants' breach. *See Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 890 (citing *USAA Tex. Lloyds Co.*, 545 S.W.3d at 501 n.21 on elements of a contract). As the party moving for summary judgment, the Firm "had the burden to submit sufficient evidence that established on its face that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'" *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (quoting TEX. R. CIV. P. 166a(c)).

In support of its motion, the Firm presented a copy of the contract and fee agreement signed by Terrazas on behalf of Cleveland Terrazas PLLC, signed by de Rochemont individually, and signed by de Rochemont on behalf of Frontier. The contract includes the hourly rates and fees for representation as well as clauses requiring all invoices to be paid within 15 days of receipt and all unpaid invoices to accrue interest at a rate of 10% per annum. Additional summary judgment evidence included the affidavit of Kevin J. Terrazas and all unpaid invoices and corresponding work logs, which evidenced the Firm's performance under the contract, Appellants' breach through nonpayment, and actual damages to the Firm. As of the date of the affidavit, Terrazas averred that Appellants owed $128,251.50 in fees and $39,978.10 in interest for a combined total of $168,229.60. We conclude, based on our review of the summary-judgment evidence, that the

21

Firm satisfied its burden to show it was entitled to judgment as a matter of law by establishing each element of a breach-of-contract claim.

### C. Summary judgment was proper against de Rochemont

Once the Firm satisfied its initial burden, the burden shifted to each of the Appellants to raise a genuine issue of fact. *Amedisys, Inc.*, 437 S.W.3d at 517. Appellees contend on appeal that de Rochemont did not respond to the Firm's motion for summary judgment and is therefore precluded from raising any issue other than sufficiency of the evidence supporting the elements of their claim. However, the order granting summary judgment in this case indicates that de Rochemont responded to the Firm's motion—on the order, the trial judge struck through the words "did not respond" and replaced them with a handwritten notation indicating that de Rochemont "made response."

The Firm filed its motion for summary judgment on June 28, 2021. De Rochemont filed two pleadings after the Firm's motion—an amended answer and counterclaim and a response to the TCPA motion to dismiss on July 16, 2021. De Rochemont also appeared in person at the combined hearing on the TCPA motion to dismiss and motion for summary judgment.[28] On appeal, de Rochemont does not allege that the Firm failed to prove an essential element of its breach-of-contract claim as a matter of law. Instead, de Rochemont contends that he raised a genuine issue of material fact on his equitable-estoppel affirmative defense. [29]

---

[28] Appellees also contend on appeal that summary judgment was proper because de Rochemont admitted in his amended answer that "[T]he Defendants have never denied the $129k liability to Cleveland Terrazas PLLC and even agreed to pay 10% compounded interest on the accrued liability . . ." However, Appellees did not make this argument below, and we cannot uphold summary judgment on a ground not presented in the summary judgment motion. *See Rise Above Steel Co., LLC*, 656 S.W.3d at 581.

[29] We assume without deciding that de Rochemont's pro se filings successfully pleaded estoppel as an affirmative defense in response to the motion for summary judgment.

"[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).

We quote at length from Appellants' brief to demonstrate their arguments on appeal:

> Material fact questions exist supporting [Appellants'] affirmative defenses. Specifically, the affidavits of de Rochemont and Allen B. Craft show that [Appellees] failed to follow instructions as requested by [Appellants] and [Appellees have] repeatedly prevented [Appellants] from paying for those services that were provided as requested by causing [Appellants] to be blacklisted and/or lose investors. The affidavit of de Rochemont outlines the specific instructions not followed by [Appellees]. Additionally, the affidavit of Allen B. Craft shows that [Appellee Terrazas] was discussing confidential client information, about investors, with others without permission or even notice to [Appellants] that then caused third-party investors from backing out of their support of [Appellants]. Because a material fact question exists as to [Appellants'] affirmative defense of estoppel, [the Firm] is not entitled to summary judgment for breach of contract or quantum meruit. . . .[I]n this case, [Appellants'] own actions are the cause of any damages as evidenced by the affidavits referencing statements made by Terrazas, a graduate of the West Point Military Academy to third parties.[30]

Here, Appellants attempt to recast de Rochemont's tortious interference claims, which we have dismissed above, as evidence of equitable estoppel. Appellants do not identify any false representation or concealment of material fact by the Firm that Appellants relied on to their detriment. The evidence cited does not stand for the propositions Appellants assert.

---

[30] Appellants filed a combined brief in this appeal, and they do not discuss why summary judgment was improper as to de Rochemont or Frontier individually. Instead, the brief combines the analysis for both Appellants. This quote demonstrates that Appellants continue to conflate allegations against the Firm and Terrazas, usually treating both Appellees as one. We further note that the trial court granted summary judgment on the breach-of-contract claim. The Firm's original pleading indicated that quantum meruit was an alternate theory of recovery, and the judgment of the trial court is consistent with that alternative pleading.

Because de Rochemont neither raised a genuine issue of material fact as to any of the Firm's breach-of-contract claim elements nor as to each of his equitable-estoppel affirmative defense elements, summary judgment against de Rochemont was proper. *Fortitude Energy, LLC*, 564 S.W.3d at 180.

### D. Summary judgment was proper against Frontier

As summary judgment evidence, Frontier produced a copy of the Clark affidavit and an affidavit of de Rochemont in which he repeated many of the allegations from his own pro se pleadings. Frontier's response to the Firm's motion for summary judgment alleged that there were genuine issues of material fact as to the Firm's breach-of-contract claim and asserted the affirmative defense of equitable estoppel. The response did not contest any element of the breach-of-contract claim. Instead, it merely concluded that material issues of fact existed as to each element, but conclusory statements are insufficient to raise a fact issue to defeat summary judgment. *Fortitude Energy, LLC*, 564 S.W.3d at 183.

Neither did Frontier's response or evidence create a fact issue on every element of its equitable estoppel affirmative defense. While the response does state the elements of equitable estoppel, it does not allege or offer summary judgment evidence for any of the elements. In fact, the response repeats the same allegations as the briefing filed in this Court—alleging that the Clark and de Rochemont affidavits show Appellees prevented de Rochemont and Frontier from securing financing.

On appeal, Frontier does not direct us to summary judgment evidence that Appellees knowingly made any false representation or concealed material facts Frontier relied on to its detriment. *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 515. Because Frontier neither raised a genuine issue of material fact as to any of the Firm's breach-of-contract claim elements nor as to

24

each of its equitable-estoppel affirmative defense elements, summary judgment against Frontier was proper.

We overrule Appellants' second issue.

## IV. VOIDING THE TRIAL COURT'S JUDGMENT DUE TO CHANGE IN LEGAL STATUS

In Appellants' final issue, they argue that their post-judgment changes in legal status void the trial court's judgment. On June 15, 2022, after the final judgment, Appellants filed a "Motion to take judicial notice and for findings of fact following change in legal status." In the motion, Appellants stated that de Rochemont "is a non-resident to the Residency and alien to the legal status under the Fourteenth Amendment to the United States Constitution and no longer a U.S. Citizen." The motion further stated that Frontier "is no longer an active company and was terminated on September 15, 2021."[31] On June 17, 2022, the trial court granted Appellants' motion to take judicial notice of these changes in status.[32]

Appellant appears to be raising a jurisdictional challenge, stating that a judgment is void when the court rendering it lacked jurisdiction over the parties, property, or subject matter. However, Appellants cite no legal authority supporting their apparent assertion that a post-judgment change in legal status affects the validity of, or otherwise voids, a judgment. Because Appellants cite no authority, the issue is inadequately briefed and we do not consider it. *See* TEX. R. APP. P. 38.1(h); *see e.g.*, *Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 801 (Tex. App.— Eastland 2021, no pet.) (quoting *Smale v. Williams*, 590 S.W.3d 633, 639 (Tex. App.—Texarkana 2019, no pet.) ("Failure to cite legal authority or to provide substantive

---

[31] The trial court granted summary judgment against Frontier on September 13, 2021.

[32] We make no statement as to whether the judicial notice was proper.

analysis of the legal issues presented results in waiver of the complaint."). We overrule Appellants' third issue.

## V. CONCLUSION

We affirm the trial court's judgment.


LISA J. SOTO, Justice

May 31, 2023

Before Rodriguez, C.J., Soto, J., Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (sitting by assignment)